On Motions for ReheaRing and Clarification
 

 POLEN, J.
 

 We deny Husband’s motion for rehearing, grant Wife’s motion for clarification, and substitute the following for our July 21, 2010, opinion.
 

 Rodney James Mondello (Husband) appeals the final judgment dissolving his marriage. Maria Marcela Torres (Wife) cross-appeals. We affirm in part and reverse in part.
 

 Husband challenges the trial court’s determination that certain accounts/funds were nonmarital, and the trial court’s alleged sua sponte award of attorney’s fees. He also claims the trial court erred in awarding interest to Wife not previously requested. On cross-appeal, Wife argues the trial court erred in failing to designate two of Wife’s separately titled accounts as nonmarital, in failing to require Husband to repay a loan to Wife within the equitable distribution schedule, and in failing to value Husband’s life insurance policy. Both parties challenge the alimony award, as well as the trial court’s allocation of responsibility for Husband’s debts.
 

 Wife was born in Colombia and had two children with her first husband. When her first husband died in 1987, she inherited all of his assets. Husband and Wife married in October of 1991. At that time, Wife had a net worth of approximately $2 million, while Husband had no assets. At the time of trial, Husband was 66 years old; Wife was 43. Husband is retired and receives $1,245 per month in social security, plus approximately $2,000 in interest from a.promissory note on a loan to a friend. Wife is a software designer for Pratt & Whitney and has a gross monthly income of $6,590. Wife worked intermittently, and raised her children for much of the marriage. Husband worked in construction for awhile, and owned a garment business in New York until 1993, when he converted his building into a low-income housing project. Wife commenced divorce proceedings in March of 2007. The disputed issues at trial were the categorization of certain assets and liabilities and Husband’s request for permanent. periodic alimony.
 

 First, we find nc| error in the trial court’s categorizing the proceeds of Wife’s Smith Barney account as nonmarital property.
 

 A trial court’s legal conclusion that an asset is marital or nonmarital is subject to de novo review.
 
 Gaffney v. Gaffney,
 
 965 So.2d 1217, 1220 (Fla. 4th DCA 2007);
 
 Smith v. Smith,
 
 971 So.2d 191, 194 (Fla. 1st DCA 2007).
 

 Husband argues that the proceeds of Wife’s Smith Barney account should have been designated as marital property, because these monies originated from a refinance of the marital home; Wife’s accountant treated the funds as marital at trial; and there was uncontroverted evidence that the account was commingled with at least $25,000 of marital funds. Wife responds and we agree that the evidence demonstrates the account was derived from inherited funds, and there was no intent on Wife’s part to create a marital asset.
 

 “In evaluating assets that come to one spouse by inheritance, the task for the trial court in a dissolution proceeding is to determine whether the recipient intended
 
 *393
 
 that the assets remain non-marital or whether the recipient’s conduct during the marriage gives rise to the presumption of a gift to the other spouse.”
 
 Lakin v. Lakin,
 
 901 So.2d 186, 190 (Fla. 4th DCA 2005) (affirming trial court’s decision to treat accounts as marital where inherited funds were first deposited into joint account).
 

 Wife’s accountant testified that the Smith Barney account was a marital asset, and treated it as sVch in his report. However, Wife later introduced evidence that she inherited $2 million in assets from her late husband. She then set up accounts in Panama (at Merrill Lynch and BNP Pari-bas), which were worth nearly $1 million by 1998. She later transferred these proceeds to Smith Barney in the United States. The account remained titled in Wife’s name through the parties’ marriage, creating a presumption that it was a non-marital asset.
 
 See
 
 § 61.075(6)(b)l.-2., Fla. Stat. (2008) (“ ‘Nonmarital assets’ ... include: 1. Assets acquired ... by either party prior to the marriage, ...; 2. Assets acquired separately by either party by noninterspousal gift, bequest, devise, or descent, and assets acquired in exchange for such assets.”).
 

 We agree with Wife that the financial transactions that occurred just before the parties’ dissolution did not overcome this presumption. Wife loaned $200,000 to Husband’s friend, Maggie Skipper, using proceeds from her Smith Barney account. In September of 2006, the parties refinanced their marital residence and $417,000 was transferred into Wife’s account at Third Federal. Three months later, Skipper repaid her loan and the funds were placed into the Third Federal account, along with an additional repayment of $419,000 from loans the parties jointly made to Skipper. Three months after that, Wife transferred $200,000 from the Third Federal account into her Smith Barney account.
 

 Husband contends that some of the $200,000 transferred from Third Federal to Smith Barney was the proceeds from the refinance of the marital residence. However, Wife testified that the reason why exactly $200,000 was transferred into her Smith Barney account was because this was the exact amount of the loan she previously made to Skipper. Indeed, Wife returned to her account the exact amount of the loan she made months earlier to the third party.
 

 Even presuming that Wife made a gift to Husband, the trial court had discretion to determine that the presumption was overcome by the evidence.
 
 See Hay v. Hay,
 
 944 So.2d 1043, 1046 (Fla. 4th DCA 2006). Where the evidence is conflicting as to whether one spouse intends to make a gift to the other, “it is the responsibility of the trial court to evaluate the weight and credibility of that testimony and to arrive at a determination.”
 
 See Marsh v. Marsh,
 
 419 So.2d 629, 630 (Fla.1982);
 
 accord Francavilla v. Francavilla,
 
 969 So.2d 522, 527 (Fla. 4th DCA 2007). Here, the trial court determined all credibility issues in favor of Wife. Wife testified that she kept the Smith Barney account in her name because it was inherited from her late husband and intended for her children. She claimed she intentionally kept the account separate because she feared Husband would claim the proceeds of the account. She said she did not tell Husband she had inherited any money until she had tax problems. Finally, Wife returned $200,000 to the Smith Barney account, the same figure she loaned to Skipper from this account. Wife’s conduct reflects that no gift was intended.
 

 Husband also contends that a May 2005 deposit of $25,000 from the parties’ joint Washington Mutual account into the Smith
 
 *394
 
 Barney account requires a legal conclusion that the Smith Barney account is marital. However, Wife testified to no rebuttal that, two months earlier, she had loaned $25,000 from the Smith Barney account to Husband to pay bills. Wife testified that the May 2005 transfer was a repayment of the loan, for again, the exact amount of the loan was deposited back into her separate account. In any event, this court has held that, “[u]sing some portion of non-marital funds to pay marital expenses does not convert the remaining non-marital funds into a marital asset.”
 
 Lakin,
 
 901 So.2d at 191;
 
 see also Hamilton v. Hamilton,
 
 758 So.2d 1213, 1214 (Fla. 4th DCA 2000) (money that husband inherited retained its non-marital status when he placed funds into a separate account, even though he used funds from this inheritance for marital bills).
 

 In short, Wife overcame any presumption that a gift was intended, and thus, the trial court properly exercised its discretion in awarding Wife all of the proceeds of this account.
 

 We also reject Husband’s contention that the trial court erred in categorizing funds from Wife’s Panamanian account as nonmarital. Wife demonstrated that, after her late husband died and left her with nearly $2 million in assets, she opened an account at Merrill Lynch in Panama with an initial deposit of $250,000. When her financial advisor moved to BNP Paribas, Wife transferred the account to BNP. It is undisputed that only a few bank statements from the Panama accounts were able to be retrieved.
 

 Husband contends that the trial court erred in determining the BNP account was nonmarital, where Wife produced only “partial and sporadic” statements on this account, most of which were not even identified with Wife’s name. He further notes that Wife was unable to identify the source of four deposits into the account between 1995-96, while he testified and produced documentary evidence that these deposits came from the sale of tax credits and his premarital apartment complex. Wife conceded she was not certain of the source of these four deposits, but believed they were from other accounts she held overseas. Wife testified that she kept these accounts separate and a secret from Husband, because they were inherited from her late husband and intended to benefit her children, and because she was afraid that Husband would take the money. This court must defer to the trial court on issues of credibility, which were resolved in Wife’s favor.
 

 While Husband maintained that the account contained money he earned during the marriage, he produced no credible evidence to support this contention, or the transfer of his income into the account. The exhibit Husband relies on, Exhibit 12, is an IRS form reflecting a low-income housing credit allocation certificate. It does not show deposits into any bank account or that Husband received any funds. Husband also admitted not learning of the Panama accounts until years later, in 1999 or 2000.
 

 Finally, the two cases cited by Husband on this issue are inapposite.
 
 See Belmont v. Belmont,
 
 761 So.2d 406, 408 (Fla. 2d DCA 2000) (holding that annuities purchased with commingled funds from a joint account were a marital asset);
 
 Amato v. Amato,
 
 596 So.2d 1243, 1245 (Fla. 4th DCA 1992) (holding that proceeds of a life insurance policy received by wife as sole beneficiary, but deposited directly into the parties’ joint checking account which was “regularly drawn on over the intervening years by both parties for various purposes,” constituted marital property).
 

 
 *395
 
 Next, Husband asserts that the trial court erred in concluding that only fifty percent of the money judgments against him were marital liabilities, where Husband is jointly and severally liable for the judgments. It is undisputed that the judgments were incurred during the marriage—one for $575,431.60, rendered on October 31, 2006, and one for $1,531,848 on March 15, 2007, a week after Wife filed for dissolution. The trial court found that “one-half of the Judgment[s] is a marital debt (the other half belongs to the Husband’s partner and corporate entity).
 
 [1]
 
 Therefore, twenty-five percent of the total Judgments would be considered a marital liability in the Wife’s column.” In response and on cross-appeal, Wife contends that the trial court erred in deeming any share of the judgments to be marital.
 

 Pursuant to statute, “[mjarital liabilities” include “liabilities incurred during the marriage, individually by either spouse or jointly by them.” § 61.075(6)(a)l.a., Fla. Stat. Further, “joint and several liability” means that “each liable party is individually responsible for the entire obligation.” Black’s Law Dictionary 926 (17th ed. 1999). Still, the trial judge has broad discretionary authority to do equity between the parties, and may, for example, unequally distribute marital liabilities.
 
 See, e.g.,
 
 § 61.075(l)(g) (permitting trial court to consider the “contribution to each spouse to ... the incurring of liabilities”)
 
 &
 
 (j) (a “catch-all” factor, allowing trial court to consider “[a]ny other factors necessary to do equity and justice between the parties”).
 

 We agree with Wife that the record could support an unequal distribution of marital liabilities, where Husband was solely responsible for incurring the judgments against him. Indeed, there was no record evidence, other than Husband’s testimony deemed not credible by the trial judge, that marital funds were used for Husband’s businesses that resulted in these judgments. There was also no record evidence that the businesses were created for a marital purpose or to provide any benefit to Wife or the marital unit. Nor is there record evidence that Wife was aware of the activities that resulted in these judgments, or that Husband ever informed Wife that a lawsuit was filed against him. In other words, Husband deprived Wife of any opportunity to avoid the very judgments that may now be deemed marital liabilities.
 

 Regardless, the parties and we agree that reversal is required for the trial court to explain its reasoning.
 
 See Pomeranz v. Pomeranz,
 
 901 So.2d 895, 896 (Fla. 4th DCA 2005) (providing that “an equitable distribution plan requires ‘specific written findings of fact’ including ‘findings necessary to advise the parties or the reviewing court of the trial court’s rationale for the distribution of marital assets and allocation of liabilities.’ ”) (quoting § 61.075(3)(d), Fla. Stat. (2003)). Here, the trial court did not explain why it determined fifty percent of the judgments were marital debt. The court simply noted that one half of the debt belonged to the other entities. It is possible the trial judge effectuated a compromise between the parties’ positions: Husband sought 100
 
 *396
 
 percent of the value of the judgments to be declared as marital debt; Wife requested that none of the value of the judgments be deemed marital debt. However, “[t]he trial court’s valuation must be based on competent evidence and cannot be determined by “split[ting] the difference.”
 
 Augoshe v. Lehman,
 
 962 So.2d 398, 403 (Fla. 2d DCA 2007) (quoting
 
 Solomon v. Solomon,
 
 861 So.2d 1218, 1221 (Fla. 2d DCA 2003)).
 

 Because the trial judge did not adequately explain the basis for the marital distribution of these liabilities, we remand for clarification or reconsideration. As discussed, the trial court is not precluded on remand from unequally distributing any marital liabilities.
 

 Regarding alimony, the trial court ordered Wife to pay Husband a $75,000 lump sum payment. Husband argues that the trial court failed to make the requisite factual findings to justify the denial of permanent alimony. Husband further suggests that the court abused its discretion by awarding lump sum alimony instead of permanent alimony where the parties were married for 16.5 years, Husband is twenty years older than Wife, Wife has grossly higher income, and Wife’s non-marital assets totaled $1,469,320. On cross-appeal, Wife contends that the trial court erred in awarding lump sum alimony where the court did not state, and the record does not show, the existence of special circumstances to support this award.
 

 “ ‘[T]he nature and amount of an award of alimony is a matter committed to the sound discretion of the trial court.’ ”
 
 Kovalchick v. Kovalchick,
 
 841 So.2d 669, 670 (Fla. 4th DCA 2003) (quoting
 
 Geddes v. Geddes,
 
 530 So.2d 1011 (Fla. 4th DCA 1988)). This court reviews alimony awards for an abuse of discretion.
 
 Ryan v. Ryan,
 
 927 So.2d 109, 112 (Fla. 4th DCA 2006).
 

 In determining a proper award of alimony, a court must consider the factors set forth in section 61.08(2), Florida Statutes. When a marriage falls within the “gray area” of length, as here, no presumption in favor of or against an award of permanent alimony exists.
 
 Nichols v. Nichols,
 
 907 So.2d 620, 622 (Fla. 4th DCA 2005) (citation omitted).
 

 To award lump sum alimony, the trial court must find 'a “special necessity.”
 
 Rosario v. Rosario,
 
 945 So.2d 629, 632 (Fla. 4th DCA 2006) (citing
 
 Porzio v. Porzio,
 
 760 So.2d 1075, 1077 (Fla. 5th DCA 2000);
 
 Glazner v. Glazner,
 
 693 So.2d 650, 652 (Fla. 5th DCA 1997);
 
 Simpson v. Simpson,
 
 372 So.2d 526, 527 (Fla. 4th DCA 1979)). “If support is needed, there must exist unusual circumstances which would require a non-modifiable award of support. These findings of special circumstances must be something above and beyond the justifications for an award of permanent periodic alimony.”
 
 Rosario,
 
 945 So.2d at 632 (citations omitted).
 

 Here, the court denied Husband’s request for permanent alimony but awarded him lump sum alimony of $75,000. The final judgment states only that: “This is a marriage of approximately 16½ years, which is a gray area for permanent alimony, and the Husband has made a substantial financial contribution over the course of this marriage.” However, there is no indication the trial court considered the other statutory factors; e.g., Husband’s age and earning capacity and the couple’s standard of living. Nor did the trial court make any special findings as to why a lump-sum award was appropriate. These omissions require a reversal.
 
 Ryan,
 
 927 So.2d at 112 (citing
 
 Nichols,
 
 907 So.2d at 622);
 
 Rosario,
 
 945 So.2d at 632. We therefore reverse and remand the case to the trial court to make the requisite find
 
 *397
 
 ings.
 
 See Ryan,
 
 927 So.2d at 112. “This does not necessarily require the trial court to alter its conclusion if it can be supported by the evidence after consideration of the requisite factors.”
 
 Id.
 

 Next, Husband asserts that the trial court erred in awarding Wife $291,700 in interest on a promissory note between Wife and Husband, as this relief was not requested by Wife until after the presentation of evidence at trial. Husband further claims that Wife’s accountant never included the interest in his financial analysis at trial, and that Husband was not put on notice that this would be a triable issue. We agree with Wife that the issue was tried by the consent of the parties.
 

 Florida Rule of Civil Procedure 1.190(b) states that “[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend shall not affect the result of the trial of these issues.”
 
 See also Scariti v. Sabillon,
 
 16 So.Sd 144, 145-46 (Fla. 4th DCA 2009) (“An issue is tried by consent when there is no objection to the introduction of evidence on that issue.”).
 

 Wife testified that she loaned $500,000 to Husband during the marriage, and that he signed a promissory note. She also testified that while Husband paid some interest on the note, between 2001 and 2003, he had not paid any interest since then. Husband conceded in his pre-trial deposition that “[q]uite a bit” of interest was owed on the note. Wife also introduced into evidence exhibits showing the terms of the note and interest. Husband raised no objection to any of the subject testimony or exhibits. The record therefore reflects that the issue of interest on the note was tried by consent.
 

 Husband’s final issue, regarding the award of attorney’s fees, is also without merit. A trial court has broad discretion in awarding attorney’s fees in a dissolution case.
 
 Rosenbloom v. Rosenbloom,
 
 892 So.2d 531, 535 (Fla. 4th DCA 2005).
 

 Here, the trial court awarded Wife $4,550 for having to prove certain assets— artwork she inherited from her late husband — were premarital, finding that Husband should have stipulated to this. Husband argues that the award was improper, as Rosen
 
 [2]
 
 fees may not be awarded sua sponte by the court, i.e., without notice to the party being charged with the fees. At trial’s end, the court announced that fees would be awarded under
 
 Rosen,
 
 section 57.105, Florida Statutes, or pursuant to the court’s inherent authority. Subsequently, Wife filed a motion to determine the amount of attorney’s fees and costs, and scheduled a hearing on the motion. Husband did not contest the entitlement to fees or the amount requested. For reasons unclear in the record, the hearing was cancelled. The final judgment noted that the parties “stipulated post trial that a reasonable fee and costs to be paid” was $4,550.
 

 “[A]s a general rule, a violation of due process occurs when a court determines matters not noticed for hearing and not the subject of appropriate pleadings.”
 
 See, e.g., Kanter v. Kanter,
 
 850 So.2d 682, 685 (Fla. 4th DCA 2003);
 
 Fuchs v. Fuchs,
 
 840 So.2d 449 (Fla. 4th DCA 2003);
 
 Stanley-Baker v. Baker,
 
 789 So.2d 353 (Fla.
 
 *398
 
 4th DCA 2001). In the case at bar, Wife did move for the application of fees and a post-trial hearing was noticed. It appears that the hearing was canceled because — as the final judgment stated — the parties had agreed to the reasonableness of the fee award. Indeed, Husband did not file an objection to the fee award, did not object to the cancellation of a hearing and did not himself move for a hearing. Under these facts, the fee award was not an abuse of discretion.
 

 Turning to the cross-appeal, Wife contends that the trial court erred in failing to designate her International Finance Bank and SunTrust accounts as nonmari-tal. Wife appears to be correct in this contention. With respect to the former, Wife demonstrated that this was a trust account set up for her children, as it is titled in her name “as guardian for” her children. The SunTrust account was also separately titled. Wife claims there was no evidence of commingling or any transactions reflecting that a gift was intended to Husband. The trial judge failed to explain why either of these accounts was designated as marital assets. In her motion for rehearing, Wife asserted that these two bank accounts were held in her name only, and should be deemed nonmar-ital. Contrary to Husband’s assertions, the transcript does not reflect a stipulation by Wife’s counsel that the International Finance Bank and SunTrust accounts were marital.
 

 Wife notes an inconsistency between the trial court’s findings and the equitable distribution schedule which reflects that the court may have intended these accounts to be deemed nonmarital (along with the accounts discussed supra). The trial court stated that it accepted Wife’s testimony that
 
 “the various bank accounts that the Wife had in her name alone, including
 
 the bank accounts in Panama and the bank accounts at Smith Barney and Merrill Lynch, were in fact premarital assets belonging to the Wife.” (emphasis added.) The court then stated that,
 
 “the monies in the various accounts in the Wife’s name
 
 will be treated as the Wife’s premarital assets in equitable distribution.” (emphasis added.) Yet, in the equitable distribution schedule, the only accounts in Wife’s name that were deemed nonmarital were the Smith Barney and BNP accounts.
 

 In light of the foregoing, we remand for the trial court to either redesignate these accounts as nonmarital or explain the inconsistency between its findings and the equitable distribution schedule.
 

 We also agree with Wife that the trial court erred in failing to require Husband to repay his loan to Wife within the equitable distribution schedule. As discussed
 
 supra,
 
 the trial court determined that Wife loaned $500,000 to Husband from her non-marital assets, and that Husband would be required to repay this loan, along with the nearly $300,000 in interest owed on the promissory note. Yet, the final judgment does not reflect that the loan will be repaid, and instead indicates that repayment was charged solely to Wife. Husband does not challenge these assertions.
 

 More specifically, page one of the equitable distribution schedule treats the promissory note (and interest) as Wife’s nonmarital asset. However, page two shows an equal division of the repayment of the note/interest, such that both spouses are held responsible for the negative “marital net equity” of $791,700. Moreover, the equitable distribution schedule shows that Wife was charged with the liability of this loan. The trial judge specified categories for the “Non marital debt owed [Wife],” and “Interest due under terms of Note,” but failed to assign a value for these items.
 
 *399
 
 No explanation was given by the trial judge for this decision, and it contradicts his findings that Husband would be required to repay the loan.
 

 Husband asserts that the repayment of his $500,000 loan from Wife “is credited to [Wife] by taking the liability in her share of equitable distribution, thus, reducing her equalizing payment to [Husband] by $250,000.” We do not understand this assertion, and Husband does not explain how Wife received a credit of any money within the equitable distribution schedule. Nor does Husband address the repayment of interest on the loan.
 

 Given the record in this case, Wife makes a convincing argument that the chance of repayment on the loan through a separate suit is improbable. Wife notes the possibility that she can sue Husband on the promissory note, but asserts that this option is “unclear,” since the trial judge stated that his goal was to “have everything resolved as much as possible as to avoid further connections in the future between the parties.” Wife further notes Husband’s $2 million plus liability from the two judgments against him, and that Husband took no steps to pay these judgments between October 2006 and the dissolution judgment. She also contends it may be legally impossible to recover on the note because of the statute of limitations.
 

 It appearing that the trial court should not have deemed repayment of the loan a marital liability, and that Wife’s equitable distribution should not have been reduced by treating repayment of the loan as a marital debt, we remand this matter to the trial court. We direct the court to either subtract the full value of the note and interest from Husband’s share of equitable distribution, or to explain the inconsistency based on record evidence.
 

 Finally, we agree with Wife that the trial court erred in failing to value Husband’s insurance policy.
 

 “Property valuation which is not supported by competent, substantial evidence cannot stand.”
 
 Bardowell v. Bardowell,
 
 975 So.2d 628, 629 (Fla. 4th DCA 2008) (quoting
 
 Mullen v. Mullen,
 
 825 So.2d 1078, 1079 (Fla. 4th DCA 2002)).
 

 Wife argues that the trial court erred in failing to render factual findings on this asset, and in designating a $0 value for the policy in light of the unchallenged evidence as to the $10,000 value of the policy. Husband does not dispute that he had a life insurance policy with a cash surrender value of $10,000, but claims there was no “documentary evidence” of this policy. However, in Husband’s financial affidavit, filed before trial, he acknowledged that he owned a life insurance policy with a cash surrender value of $10,000. In addition, Wife’s accountant advised the court of this policy and its value.
 

 Alternatively, Husband contends that Wife failed to preserve this issue for appellate review, because she did not argue on rehearing the lack of factual findings regarding this asset. In support of his position, Husband cites
 
 Mathieu v. Mathieu,
 
 877 So.2d 740 (Fla. 5th DCA 2004), which states that “a party cannot complain on appeal about inadequate findings in a dissolution case unless the alleged defect was brought to the trial court’s attention in a motion for rehearing.”
 
 Id.
 
 at 741. The Third District noted, however, that its decision was
 

 subject to one caveat: Since the principal reason for findings of fact in these cases is to allow for meaningful appellate review in this very important area of the law,
 
 if the court determines on its own that its review is hampered, we may, at our discretion, send the case hack for findings.
 

 
 *400
 

 Id.
 
 at 741, n. 1 (emphasis added).
 
 [3]
 
 Here, in any event, Wife does not simply contend that the trial court erred in failing to render factual findings on this asset. Rather, Wife contends that the trial court erred in designating a $0 value for the policy. In light of the unchallenged evidence as to the $10,000 cash surrender value of the policy, we reverse on this point, too.
 

 In summary, we reverse and remand with directions to the trial court to clarify or reconsider its allocation of responsibility for Husband’s debts, its designation of Wife’s International Finance Bank and SunTrust accounts as marital, and its failure to require Husband to repay his loan to Wife within the equitable distribution schedule. We further direct the court to make the requisite findings for its alimony determination, and to assign a $10,000 value to Husband’s life insurance policy. In all other respects, we affirm.
 

 Affirmed in part; Reversed in part; and Remanded.
 

 LEVINE, J., and GREENHAWT, SUSAN F., Associate Judge, concur.
 

 [1]
 

 . Wife explains that there was some misunderstanding regarding the number of entities liable under the judgments. At the end of trial, the judge stated there was one other debtor (a corporate entity); Wife’s counsel stated there were two other debtors. In the final judgment, the trial court stated the judg-merits were against Husband and two other entities: Husband’s corporate entity and an individual partner. However, as the judgments reflect, there were four defendants: Husband, another individual and two corporate entities.
 

 [2]
 

 .
 
 Rosen v. Rosen,
 
 696 So.2d 697 (Fla.1997).
 

 [3]
 

 . This court has expressed disagreement with
 
 Mathieu. See Dorsett v. Dorsett,
 
 902 So.2d 947, 950 n. 3 (Fla. 4th DCA 2005) (stating that the " ‘[f]ailure to make sufficient findings regarding value of property and identification of marital assets and debts constitutes reversible error and requires remand for appropriate findings to be made.' ”) (quoting
 
 Wolfe v. Nazaire,
 
 758 So.2d 730, 733 (Fla. 4th DCA 2000) (internal citations omitted)).