DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBERT B. MANFRE,**
Appellant,

v.

**CATHERINE N. MANFRE,**
Appellee.

No. 4D14-511

[February 10, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Tim Bailey, Judge; L.T. Case No. 12-8369 (41).

Peter Raimondi and Robert J. Moraitis of Robert J. Moraitis, P.A., Fort Lauderdale, for appellant.

Nancy A. Hass of Nancy A. Hass, P.A., Hallandale Beach, for appellee.

CIKLIN, C.J.

In this appeal from a final judgment of dissolution of marriage, the husband challenges the trial court's decision not to impute income to the wife for purposes of awarding alimony. We agree with the husband that the trial court erred in that regard and we reverse the alimony award. We affirm the final judgment in all other respects.

Because the final hearing was not reported, the husband relies on the trial court's Order Settling Statement Of The Evidence ("the Statement").[1] The Statement recites the exhibits introduced at trial, and provides that the court took judicial notice of the wife's deposition transcript and that the deposition of the wife's treating physician, Dr. James J. Polito, was read into evidence. The Statement also provides that the wife testified that she suffers from "diabetes, neuropathy, depression, anxiety, and skin cancer," and that these are not common ailments for a fifty-seven-year-old woman, despite the testimony of her doctor to the contrary. The

---

[1] Florida Rule of Appellate Procedure 9.200(b)(4) provides a means of preparing a record "[i]f no report of the proceedings was made, or if the transcript is unavailable."

Statement also indicates the wife testified that she "walks regularly, exercise[s] daily and attends Jazzercise two to three times per week."

In her deposition, the wife, a registered nurse, testified regarding her work history and current employment. Prior to November 2011, when she voluntarily left employment, she worked for West Boca Medical Center earning $36 an hour. She worked three twelve-hour shifts during the week. After receiving a raise of one dollar an hour each year she worked there, she was earning a salary of $80,000, which included a significant amount of overtime. When she resigned, she told the husband she was "tired of this job and I hate it and I can't stand it anymore." She did not want to be "on my feet [twelve] hours." The job was too stressful, and because she was done paying for her daughter's college tuition, she saw no need to continue in that employment.

After her resignation, she looked for other jobs utilizing her nursing degree and experience but not requiring shift work. Since November 2011, she had been employed by Broward Outpatient Center as a pre-op and post-op nurse, earning $31 an hour. Her hours had been cut back which resulted in her working ten to fifteen hours a week. She had applied for full-time nursing jobs that would not require her to work nights and weekends, but she did not receive responses. She also applied for part-time work to supplement her current part-time job, but she never made it far enough in the process to find out about pay. At one point, she received an offer from a home health care company as a full-time nurse but turned it down because, she concluded, the salary that was offered—$50,000—was too low for someone with her experience.

The wife testified that the "going rate" for the job she left was $60,000 to $65,000 a year "according to national average." Her previous salary as a hospital nurse was not a conventional starting salary and was based on raises she earned over the course of her employment. She acknowledged that Broward County had a shortage of hospital nurses but she was not willing to return to a hospital setting doing shift work. The wife also conceded that there were no medical conditions preventing her from working full-time.

In his deposition, Dr. Polito testified in terms of hypotheticals. For instance, he testified that a person with the wife's conditions could work ten-hour or twelve-hour shifts if "she's under control with those different conditions." He assumed she was under control, as she had not been in to see him for six months. He characterized the wife as being in "pretty good shape," and judging from the last time he saw her, able to work full time.

In its final judgment, the trial court found that the parties were married for more than thirty years, the wife was fifty-six years old and the husband sixty-seven years old at the time the petition was filed, and the husband earned about $132,000 a year. The court recognized that from 2008 to 2011, the wife "showed an ability to make over $75,000," but it declined to impute income to her, reasoning as follows:

> The Court finds that the Wife is not afraid of work. The Court finds that both parties are hard working. The Court heard testimony from the Wife that she is old and does not want to work on the floors of a hospital. The Court finds that the Wife has made good faith efforts not to be underemployed, as she is working [30 to 37] hours per week. The Court does not find this is an imputation of income case.

As for the wife's health, the court made the following finding: "The Wife testified that she suffers from diabetes, neuropathy, depression, anxiety, and skin cancer. This Court does not believe that these ailments and illnesses are common for a fifty-seven [ ] year-old woman . . . and disagrees with Dr. Polito."

"The standard of review governing a trial court's imputation of income is whether the determination is supported by competent, substantial evidence." *Brown v. Cannady-Brown*, 954 So. 2d 1206, 1207 (Fla. 4th DCA 2007). Alimony awards are reviewed for an abuse of discretion. *Green v. Green*, 126 So. 3d 1112, 1114 (Fla. 4th DCA 2012).

Florida's alimony statute, section 61.08, Florida Statutes (2012), provides in pertinent part:

> 2) In determining whether to award alimony . . . the court shall first make a specific factual determination as to whether either party has an actual need for alimony or maintenance and whether either party has the ability to pay alimony or maintenance. If the court finds that a party has a need for alimony . . . and that the other party has the ability to pay . . . then in determining the proper type and amount of alimony . . . the court shall consider all relevant factors, including, but not limited to:
>
> . . . .
>
> (c) The age and physical and emotional condition of each

party.

(d) The financial resources of each party . . . .
(e) The earning capacities, educational levels, vocational skills, and employability of the parties . . . .

. . . .

(i) All sources of income available to either party . . . .

§ 61.08, Fla. Stat. (2012).  "[T]he amount of income a spouse may be able to earn is a factor the court *should* consider in determining an alimony award."  *Shrove v. Shrove*, 724 So. 2d 679, 682 (Fla. 4th DCA 1999).  "The spouse claiming that the other spouse is voluntarily [underemployed] bears the burden of proof."  *Zarycki-Weig v. Weig*, 25 So. 3d 573, 575 (Fla. 4th DCA 2009) (citation omitted).

We have previously explained the analysis a trial court must undertake when faced with the issue of imputing income:

Although the trial court is free to determine the credibility of witnesses, restraints on imputation exist in the form of a required two-step analysis.  First, the trial court must conclude that the termination of income was voluntary; second, the court must determine whether any subsequent underemployment "resulted from the spouse's pursuit of his own interests or through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received."

*Brown*, 954 So. 2d at 1207 (citation omitted); *see also Schram v. Schram*, 932 So. 2d 245, 249 (Fla. 4th DCA 2005) ("A court may impute income where a party is willfully earning less and the party has the capability to earn more by the use of his best efforts.").  "Voluntary underemployment occurs when a spouse does not put forth a good faith effort to find a position that is comparable to previous employment which was terminated."  *Vitro v. Vitro*, 122 So. 3d 382, 384-85 (Fla. 4th DCA 2012) (citation omitted).  When the trial court's findings and the evidence do not support the court's decision on imputation, reversal is required.  *See Burkhardt v. Bass*, 711 So. 2d 158, 161 (Fla. 4th DCA 1998).

In this case, the wife acknowledges that the first prong of the test for imputation is satisfied, as she left her job voluntarily.  Thus, the only remaining issue is whether the trial court erred in its findings regarding

the second prong—whether the wife made diligent, bona fide attempts to find a comparable job. The court did not make express findings on this prong. Instead, the court summarized the wife's testimony, and found that her health conditions were not common for her age. The court also found the wife was not voluntarily underemployed as she works 30 to 37 hours per week. This latter finding was contrary to the evidence—the wife testified that at the time of trial, she was working ten to fifteen hours a week, although she had worked up to 37 hours a week when the work was available at her current employment.

It was undisputed at trial that if the wife resumed hospital shift-work, she would most likely not be offered a salary of $80,000—a salary she achieved after many years in the employ of West Boca Medical Center. However, she admitted that positions comparable to the one she left were available and that the average pay for such positions was between $60,000 and $65,000. She also acknowledged that she had turned down a job that met all her requirements, based solely on the fact it paid only $50,000. That makes this case akin to *Green*, 126 So. 3d 1112. There, the wife had a photography business before the marriage and earned $80 an hour, but had not worked for many years. She acknowledged she could obtain employment making $10 an hour but was unwilling to accept the low pay. On appeal, we affirmed the award of permanent alimony but reversed based on the trial court's failure to impute income to the wife:

> Here, there was competent, substantial evidence that Former Wife had the requisite skills that allowed her to earn $80 per hour operating her own photography business. And, although Former Wife testified that her job searches proved unsuccessful, her acknowledged unwillingness to "work for $10 an hour" is competent evidence that Former Wife's unemployment status was self-imposed. At the very least, this evidence established a lack of best efforts on the part of Former Wife to seek gainful employment.

*Id.* at 1114.

Here, the wife is under no obligation to return to the hospital setting. The trial court, of course, may certainly consider health issues when determining a party's ability to do certain types of work, but the trial court did not find that the wife's health issues precluded her from taking on employment comparable to the type she voluntarily left, and the record does not support such a finding. Accordingly, we reverse and remand for the court to impute income to the wife. If the court finds

5

alimony is necessary, it must recalculate the appropriate amount utilizing the income imputed to the wife.

*Affirmed in part, reversed in part, and remanded.*

TAYLOR and LEVINE, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**