# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

————————————————

CHRISTOPHER L. BURKE

Appellant,

v.

MAUREEN KELLY BURKE n/k/a MAUREEN BRIDGET KELLY,

Appellee.

No. 2D20-1398

————————————————

September 3, 2021

Appeal from the Circuit Court for Pinellas County; Christopher LaBruzzo, Judge.

Timothy W. Weber of Weber, Crabb and Wein, P.A., Saint Petersburg, for Appellant.

Gary E. Williams of The Law Firm for Family Law, Clearwater, for Appellee.

LUCAS, Judge.

Having reviewed the record and the arguments of the parties carefully, we cannot conclude that the final judgment dissolving the parties' long-term marriage and awarding Maureen Burke (the

Former Wife) permanent, periodic alimony in an amount well within Christopher Burke's (the Former Husband) ability to pay reflected a ruling "no reasonable [judge] would" make. *See Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980) (quoting *Delno v. Mkt. St. Ry. Co.*, 124 F.2d 965, 967 (9th Cir. 1942)); *see also Librizzi v. Librizzi*, 228 So. 3d 593, 595 (Fla. 2d DCA 2017) ("This court reviews an alimony award for an abuse of discretion." (citing *Crick v. Crick*, 78 So. 3d 696, 698 (Fla. 2d DCA 2012))); *Johnson v. Johnson*, 454 So. 2d 797, 799 (Fla. 4th DCA 1984) (holding that because "reasonable people could differ as to the propriety of the award" of alimony, the appellate court was "bound to affirm").[1] The circuit court had the benefit of observing first-hand the witnesses and their

---

[1] Our dissenting colleague suggests that the circuit court's findings necessarily force the Former Husband to "work overtime." That is not exactly accurate. The court found that the Former Husband had consistently worked overtime as a police officer for nearly two decades. *Cf. Lauro v. Lauro*, 757 So. 2d 523, 526 (Fla. 4th DCA 2000) (recognizing that regular and continuous overtime or bonuses may properly be included in calculating income for alimony). Moreover, the Former Husband has earned additional income as an elected city councilman. His salary has approached or exceeded $100,000 annually for years. On the facts of this case, there is nothing about the $2,500 monthly alimony award that suggests this was an alimony determination no reasonable jurist could possibly make.

credibility. The court concluded that the Former Wife "was not underemployed"—a not unreasonable determination since the Former Wife is now a sixty-year-old woman who had been a stay-at-home mother for the parties' two children and only worked part-time for the fourteen years leading up to the trial. The court also rejected the opinion of Former Husband's vocational expert concerning the Former Wife's future employment prospects as a teacher.[2] The court was free to make those evidentiary assessments. As an appellate court, we are not free to reweigh them, *Meyers v. Meyers*, 295 So. 3d 1207, 1213 (Fla. 2d DCA 2020), and certainly not in the guise of a purported "legal error."

For what the dissent styles as "legal error"—essentially, that imputation of income ought not to apply to alimony under Florida Statute section 61.08 in the same fashion as it does to child support under section 61.30(2) (and that, as such, the circuit court should have deemed the Former Wife underemployed)—is, at bottom, simply a disagreement with the circuit court's application of

---

[2] In so ruling, the court noted that the Former Wife may have held a degree, but she did not have the requisite certification to become employed as a teacher.

3

the facts to the law.[3]  It also reflects a novel legal argument that, for better or worse, was neither raised below nor in this appeal.  *See W.R. Grace & Co.-Conn. v. Dougherty*, 636 So. 2d 746, 749 (Fla. 2d DCA 1994) ("An appellate court will not consider arguments of legal error not raised before the trial court." (quoting *Steinhorst v. Wainwright*, 477 So. 2d 537, 539 (Fla. 1985))); *Anheuser-Busch Cos. v. Staples*, 125 So. 3d 309, 312 (Fla. 1st DCA 2013) ("[W]e are not at liberty to address issues that were not raised by the parties."); *Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983) ("This Court will not depart from its dispassionate role and become an advocate by second guessing counsel and advancing for him theories and defenses which counsel either intentionally or unintentionally has chosen not to mention. . . . When points, positions, facts and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy.").

---

[3] Because even if the Former Wife were imputed income as the dissent suggests, the $2,500 monthly alimony award would not be unreasonable under these facts—a point the dissent fails to broach.

Finding no merit in any of the arguments the Former Husband has raised, we affirm the final judgment in all respects.

Affirmed.

ROTHSTEIN-YOUAKIM, J., Concurs.

ATKINSON, J., Dissents with opinion.

ATKINSON, Judge, Dissenting.

In this appeal from a final dissolution of marriage, the Former Husband appeals, among other things, the award of $2,500 per month in permanent, periodic alimony to the Former Wife. The trial court arrived at its conclusion that the Former Wife was in need of that level of alimony based on its conclusion that it was not permitted to grant the Former Husband's request to impute to her a higher level of income than she had been earning at the part-time job she had held for the last fourteen years. Because I conclude that the trial court failed to meaningfully consider the Former Wife's earning capacity, vocational skills, and employability—as it was required by statute to do—I dissent.

The Former Wife admitted she was not incapable of working full-time but expressed a preference for continuing to work part-

5

time instead, and she had not made any effort to obtain full-time employment or supplement her income with an additional part-time job. While never having utilized her bachelor's degree in elementary education to obtain a full-time teaching position, for the past fourteen years she has worked as a part-time health instructor for elementary-aged, public school children for $25 per hour when schools were in session. After graduating from college in the 1980s, the Former Wife had worked as a full-time flight attendant until she left the workforce for a four-year hiatus following the birth of the parties' second child in 1999, after which she began to work part time when her (now adult) children were all in school. The Former Husband is a police officer who expressed a desire to reduce or eliminate the overtime hours that he worked when his children were young and that he has worked ever since.

The trial court explained its position that it was not permitted to contemplate the possibility that the Former Wife is capable of earning more than she presently earns or has earned in the recent past, and the trial court concluded that the potential to acquire additional credentials in order to increase her chances of realizing a

higher income was similarly forbidden as a factor in its

determination of the alimony award:

> The Court reviewed the testimony and reports of the vocational evaluator and considered Husband's request that the Court impute income to the Wife. The Court notes that Ms. Burke has been employed for an extended period of time with her current employer, 14 years. Since the Wife has worked in her current employment for that period of time, that is her level of employment; the Wife is not under-employed. The request to impute income to her at a level beyond which she has ever earned is not appropriate based on the facts of this case. The case law submitted to the Court by the parties' attorneys indicates that the Court cannot impute to the Wife an income above that which she has ever earned. The Court also does not accept the vocational evaluator's suggestion that the Wife can work as a teacher today, given the fact that, while the Wife has the requisite education, she does not have the certificates that are required. Therefore, the Court is not imputing a teacher's income to the Wife either.

By contrast, the trial court concluded that the Former

Husband should be required to continue to work overtime, because

the Former Husband had worked overtime in the past:

> Mr. Burke has the ability to pay alimony to the Wife. Using a present snapshot of Mr. Burke's ability to pay, indicates th[at] Mr. Burke has gainful employment. He is earning enough money to have a surplus. While Mr. Burke testified that he did not want to work overtime, he also testified that he has worked overtime for almost 20 years. This is a sufficient period of time for the Court to consider his overtime as part of his income. Mr. Burke has the ability to pay to the Wife the amount of $2,500

7

per month in permanent periodic alimony. . . . This amount of alimony helps bring the two parties into a position as close to the level of the lifestyle that the parties enjoyed during the marriage as their financial circumstances permit.

The trial court's reasoning was inconsistent with its statutory charge. Section 61.08 requires that, in determining whether to award permanent alimony, which is designed to "provide for the needs and necessities of life as they were established during the marriage of the parties for a party who lacks the financial ability to meet his or her needs and necessities of life following a dissolution of marriage," the trial court must determine "whether either party has an *actual* need" for it. § 61.08(2), (8), Fla. Stat. (2020) (emphasis added). Contrary to the rationale expressed in the trial court's order, the statute indicates that it is the "needs and necessities of life" that should be maintained as they were "during the marriage," not necessarily the parties' respective contributions toward financing those needs and necessities. *See* § 61.08(8). "[A] court may impute income to a party who has no income or is earning less than is available to him based upon a showing that the party has the *capability to earn more* by the use of his best efforts." *Solomon v. Solomon,* 861 So. 2d 1218, 1220 (Fla. 2d DCA 2003)

8

(emphasis added) (quoting *Koeppel v. Holyszko*, 643 So. 2d 72, 75 (Fla. 2d DCA 1994)).

The language of the alimony statute plainly contemplates the possibility that a spouse might be expected to obtain additional or more remunerative employment, regardless of what she might have earned in the past. Rather than focusing on the parties' current income level or what income the parties have historically earned, the statute requires consideration of their "earning *capacities*"; rather than confining the focus to where the parties are currently employed or the nature of their past employment, the statute requires consideration of the "*employability*" of the parties, as well as their "education levels" and "vocational skills." *See* § 61.08(2)(e) (emphasis added). And, rather than foreclosing the possibility that a spouse might be expected to obtain additional training or credentials in order to adequately contribute to her own living expenses, the statute requires consideration of, "when applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment." *See id.* "Where a Former Husband has an ability to earn if he so desires, the trial judge should impute an income to him according

to what he *could earn* by the use of his best efforts to gain employment equal to his capabilities, and on that basis enter an award of alimony as if the husband were in fact earning the income so imputed." *Hayden v. Hayden*, 662 So. 2d 713, 716 (Fla. 4th DCA 1995), *as clarified* (Nov. 15, 1995); *see also Manfre v. Manfre*, 189 So. 3d 197, 200 (Fla. 4th DCA 2016) ("[T]he amount of income a spouse *may* be able to earn is a factor the court *should* consider in determining an alimony award." (alteration in original) (first emphasis added) (quoting *Shrove v. Shrove*, 724 So. 2d 679, 682 (Fla. 4th DCA 1999))).

To reach the conclusion that the Former Wife should not be expected to work more than part time to cover needs and necessities that would otherwise be covered by alimony, the Former Wife and the trial court relied on a prohibition on imputation of income at a level higher than the spouse has earned in the past. But that prohibition does not appear in the alimony statute. *See generally* § 61.08. That prohibition is expressly included in the child support statute, which mandates imputation of income when a spouse is unemployed or underemployed but explicitly prohibits such imputation at a level not previously earned by the spouse

absent special circumstances.  § 61.30(2)(b) (disallowing imputation of income "at a level that a party has never earned in the past, unless recently degreed, licensed, certified, relicensed, or recertified and thus qualified for, subject to geographic location, with due consideration of the parties' existing time-sharing schedule and their historical exercise of the time-sharing provided in the parenting plan or relevant order").

The legislature did not include an imputation requirement in the alimony statute.  And just as there is no mandate for imputation in the alimony statute, no prohibition on imputation above an amount previously earned appears in its text either.  The Former Wife pointed out the distinction with the child support determination, on which the governing statute does expressly impose such an imputation requirement.  However, her argument elides the other pertinent distinction between the statutes—that the child support statute includes the prohibition on imputation at a level higher than a spouse has historically earned whereas the alimony statute does not include such a restriction.

While there is no imputation mandate in the alimony statute, there is a requirement that the trial court "shall" consider certain

11

enumerated factors, some of which include the possibility that a spouse might be able to improve her earning capacity beyond what it has been in the past if it is within her ability. *See* § 61.08(2). Application of a strict prohibition against imputation of income at a level higher than has been historically earned has the potential to prevent a trial court from meaningfully considering the mandatory factors listed in at least one of the alimony statute's subsections— the "earning capacities, educational levels, vocational skills, and employability of the parties and, when applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment." *See* § 61.08(2)(e). In this case, it is apparent from the record and the written order on appeal that the trial court abdicated its obligation to consider those factors when it erroneously foreclosed the possibility that income could be imputed to the Former Wife at a level higher than she had earned in the past.

Inappropriately stilted by its "snapshot" of the parties' employment histories, the trial court required the Former Husband to "work overtime" because he had done so for twenty years but foreclosed the possibility that the Former Wife could be required to

work anything more than part time because that was the schedule she had kept with her current employer for fourteen years. The trial court also rejected "the vocational evaluator's suggestion that the Former Wife can work as a teacher today, given the fact that, while the Wife has the requisite education, she does not have the certificates that are required." This reasoning is erroneous for several reasons. First, testimony of the Former Husband's expert supported that some private schools do not require a certificate. Second, the court's reasoning explicitly focuses on the spouse's present and past ability to earn based on the precise circumstances that exist in the present moment; this is inconsistent with factors the statute requires the trial court to consider such as a spouse's earning *capacity* (not just her present earnings) and her *employability* (not just her present or past employment). And third, the statute makes allowance for the possibility of a spouse taking the time to acquire additional training and education in order to "enable such party to find *appropriate* employment." *See* § 61.08(2)(e) (emphasis added); *see also* § 61.08(2)(j) (requiring consideration of "[a]ny other factor necessary to do equity and justice between the parties").

13

The Former Husband's vocational expert testified that available positions in public schools would allow the Former Wife to begin working with a temporary teaching certificate as long as she obtained the requisite certificate within three years. In *Schlagel v. Schlagel*, 973 So. 2d 672, 675–76 (Fla. 2d DCA 2008), this court affirmed imputation of income to a wife whose work history had only shown "minimal earnings" in the past. Ms. Schlagel had attended law school but failed to pass the bar exam after four attempts. *Id.* at 674. Citing evidence of "career opportunities available to a person with a law degree but not Florida Bar licensure," this court approved of the trial court's finding that Ms. Schlagel "failed to use her best efforts to secure employment." *Id.* at 674–76. The Former Wife in this case has a teaching degree but lacks certification. While Ms. Schlagel had a track record of failed attempts to pass the bar exam, the Former Wife in this case refuses even the possibility of obtaining a teaching certificate and avowedly eschews any effort to seek out opportunities for higher pay that do not require such a certificate—despite evidence that the certificate requirement is not universal and can sometimes be temporarily waived by employers who do require it.

14

The Former Wife flatly refused to seek such opportunities or any alternative or addition to her current employment arrangement. Transitioning to a full-time teaching position is not the only conceivable way the Former Wife could increase her income. Even if the trial court had concluded that full-time work as a teacher based on her education degree was not an appropriate expectation, the Former Wife could have sought supplementary employment by finding a second part-time job or another full-time position with similar pay. *Cf. Hinton v. Smith*, 725 So. 2d 1154, 1157–58 (Fla. 2d DCA 1998) (concluding the evidence supported "the trial court's determination that the Former Wife unreasonably limited herself to a less than full-time position" and that "the correct amount of income for the trial court to impute to the Former Wife in this case would have been the amount she would make at her current rate of pay if she worked full-time"). Yet the trial court artificially ruled out any potential for additional earnings by applying the categorical rule from the child support statute to its determination of the Former Wife's need for alimony.

On at least one occasion, this court has imputed (if you will) to the alimony analysis the child support statute's strict prohibition

on imputing income at higher than historical earnings levels. In *Castaldi*, cited by the Former Wife, this court relied on case law reviewing child support awards—but not alimony awards—to borrow the standard from the child support statute for use in the context of an alimony determination. *See Castaldi v. Castaldi*, 968 So. 2d 713, 716–17 (Fla. 2d DCA 2007) ("[I]ncome may not be imputed at a level which the former spouse has never earned, absent special circumstances." (alteration in original) (quoting *Hinton*, 725 So. 2d at 1157 (quoting *Stein v. Stein*, 701 So. 2d 381, 382 (Fla. 4th DCA 1997) (reversing imputation of income to a former husband "and its effect on [his] child support obligation")))). Relying on the language of the child support statute and case law interpreting it, this court concluded that the trial court had not abused its discretion by "deciding not to impute a higher income to the Wife." *Castaldi*, 968 So. 2d at 716. Leaving aside questions about the propriety of relying on the language of the child support statute in reviewing an alimony award, the referenced prohibition was not necessary to the holding of *Castaldi*. The court in *Castaldi* concluded that the vocational expert on which the husband relied had only identified job opportunities that significantly exceeded the

16

wife's qualifications, including some that would require "several months of retraining" and others that would require "additional training that would take a year, cost approximately $5,000, and require the Wife to quit her current full-time job to attend classes," *id.* at 715—a far cry from the Former Wife in this case, who the expert suggested could supplement her part-time position with additional part-time employment or could begin working full-time in a teaching position with some but not all potential employers making immediate employment contingent on obtaining a certification within three years. But, more importantly, a categorical prohibition on imputation of income at a level never before earned by a spouse—as could be inferred from case law applying a prohibition like the one explicitly set forth in the child support statute—is incompatible with the language of the alimony statute, the language of which plainly requires a court to consider a spouse's earning *potential* without a cap based on prior levels.

Notably, the alimony statute does not even include the concept of imputation. It lacks the formulaic calculations required by the child support statute that would necessitate such a regimented determination of a defined imputation amount. *Cf. generally* §

61.30.  Rather, the language of the alimony statute assumes that the trial court will determine a spouse's need for alimony based on her "financial ability" to meet them on her own—after consideration of the mandatory factors of section 61.08(2)(e), none of which place any restrictions on a trial court's gaze into a future when the requesting spouse might equitably be expected to work in a different or greater capacity than she has in the past.  As such, categorically foreclosing the possibility of a spouse improving her earning ability by obtaining more remunerative employment— whether by increasing her hours from a part-time basis to full time or by making marginal efforts to acquire easily obtainable credentials that would make her a more marketable candidate— runs directly afoul of the language of the alimony statute. Permanent alimony is only available to a party who "lacks the financial ability to meet his or her needs and necessities of life following a dissolution of marriage."  *See* § 61.08(8).  That financial ability must be examined through the lens of forward-looking, mandatory, statutory factors such as earning *capacity* and *employability* and the possibility of obtaining "sufficient education or training to enable" a spouse "to find *appropriate* employment"

18

with a sufficient allowance of time to do so.  *See* § 61.08(2)(e) (emphasis added).

Unlike the child support statute, nothing in the alimony statute even suggests that a court should turn a blind eye to the potential for a spouse seeking alimony to improve her income to a level higher than she has earned in the past.  And nothing in this record indicates that the Former Wife's "financial ability" does not exceed the income she currently earns in her part-time, seasonal job.  To the contrary, competent substantial evidence supports that the Former Wife could supplement or increase her income if she tried.  *See Manfre*, 189 So. 3d at 200–01 ("A court may impute income where a party is willfully earning less and the party has the capability to earn more by the use of his *best* efforts." (emphasis added) (quoting *Schram v. Schram*, 932 So. 2d 245, 249 (Fla. 4th DCA 2005))).

Moreover, it is apparent from other applicable case law that a trial court is under no categorical restriction to a level that a spouse seeking alimony has earned in the past.  *See, e.g.*, *Schlagel*, 973 So. 2d at 675–76 (acknowledging that "[a]s a general rule, where we have upheld the trial courts' imputation of income, the spouse had

19

a track record of having earned the imputed amount" but affirming imputation at a higher level of income earned in the past by a spouse who "failed to use her best efforts to secure employment" that the record showed she was capable of obtaining (quoting *Hinton*, 725 So. 2d at 1157)).  Here, the court stopped short of inquiring whether the Former Wife had exerted her best efforts to obtain *any* employment more remunerative than her current part-time arrangement, instead making a legal determination that she would never again be required to work more than part time.  That legal determination is at odds with the governing statute.

This court's standard of review of an alimony award is deferential to the trial court, whose decision must be affirmed as long as it is supported by competent substantial evidence and does not constitute an abuse of discretion.  *Schlagel*, 973 So. 2d at 675, 676 ("The standard of review concerning a trial court's imputation of income is whether competent, substantial evidence supports the trial court's decision," and a "decision on whether permanent, periodic alimony is appropriate is subject to an abuse of discretion standard of review." (first citing *Fitzgerald v. Fitzgerald,* 912 So. 2d 363, 368 (Fla. 2d DCA 2005); then citing *Hinton,* 725 So. 2d at

20

1156; and then citing *Murray v. Murray*, 598 So. 2d 310, 312 (Fla. 2d DCA 1992)). The trial court has the benefit of first-hand fact-finding and the flexibility to fashion a result that is equitable under the circumstances. *See Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980) ("In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the 'reasonableness' test to determine whether the trial judge abused his discretion.").

However, "[a]s great as the trial court's discretion is, it is not given the discretion to disregard the law." *Kennedy v. Kennedy*, 622 So. 2d 1033, 1034 (Fla. 5th DCA 1993). Failure to consider and apply all the mandatory statutory factors for determining alimony is a misapplication of law. *Id.* (finding "that the court erred in its application of the law by failing to consider all of the mandated factors in determining the alimony issue"); *Canakaris*, 382 So. 2d at 1202 ("In order to properly review orders of the trial judge, appellate courts must recognize the distinction between an incorrect application of an existing rule of law and an abuse of discretion."); *Nichols v. Nichols*, 907 So. 2d 620, 622 (Fla. 4th DCA 2005) ("[A]n abuse of discretion standard is not appropriate where the trial

21

judge fails to apply the correct legal standard, such as when 'the trial court erred by not considering all of the appropriate statutory factors . . . as a predicate to awarding periodic rehabilitative alimony rather than permanent alimony.' " (quoting *Ondrejack v. Ondrejack*, 839 So. 2d 867, 870 (Fla. 4th DCA 2003))); *Mondello v. Torres*, 47 So. 3d 389, 396 (Fla. 4th DCA 2010) (reversing because there was no indication that the trial court considered certain statutory factors, including earning capacity, in making its alimony award).

The trial court's application of an erroneous legal standard led to the abdication of its obligation to consider all the factors set forth and made mandatory by the legislature in the language of the alimony statute. The court failed to even consider the possibility that a spouse currently working part time but whose capacity to work more and earn more was supported by record evidence could ever be expected to do so. That is not consistent with the requirement to consider the parties' "earning capacities, educational levels, vocational skills, and employability of the parties and, when applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate

22

employment." § 61.08(2)(e). As such, the trial court erred when it refused to impute any "income above that which she has ever earned." Under the circumstances of this case, by rejecting the possibility that the Former Wife could be expected to exert even a scintilla of effort to find more remunerative work, a supplemental part-time job, or a position that paid her for more hours than her current part-time position, the trial court failed to meaningfully consider her earning capacity, education level, vocational skills, and employability as it was required by statute to do. *Cf. Solomon*, 861 So. 2d at 1220, 1222 (reversing an alimony award "based on the trial court's failure to apply the correct legal standard to determine whether to impute income to the Former Wife"); *see also Ondrejack*, 839 So. 2d at 870 ("A failure to consider all of the mandated factors [in making an alimony determination] is reversible error."). As such, I would reverse and remand with instructions to reconsider the alimony award after determining whether and how much income should reasonably be imputed to the Former Wife based on competent, substantial evidence.

_____

23

Opinion subject to revision prior to official publication.