NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LARRY NIEKAMP,                    )
                                  )
         Appellant,               )
                                  )
v.                                )        Case No. 2D14-728
                                  )
SUSAN NIEKAMP,                    )
                                  )
         Appellee.                )
_____   )

Opinion filed August 26, 2015.

Appeal from the Circuit Court for Lee
County; John S. Carlin, Judge.

Sam R. Assini and Matthew P. Irwin of
Men's Rights Law Firm, Cape Coral, for
Appellant.

Luis E. Insignares of Luis E. Insignares,
P.A., Fort Myers, for Appellee.


NORTHCUTT, Judge.

         Larry Niekamp raises multiple issues in his appeal from the amended final

judgment dissolving his marriage to Susan Niekamp.  We reverse and remand for

further proceedings, as specified below.

         The Niekamps were married for twenty-two years, and they have two

children.  From early in their relationship, Ms. Niekamp has known that her husband has

mental health difficulties.  Over the years, they have tried to address these issues with

professional help and medication, with only limited success. For the first half of the marriage, Mr. Niekamp worked outside the home in a managerial position and then as a computer programmer. Around 2002, the parties decided that Ms. Niekamp would open a business and that Mr. Niekamp henceforth would take care of the children and keep the business's books. This arrangement prevailed until the parties separated in 2011. By the time the marriage was dissolved in 2013, Mr. Niekamp had been out of the workforce for more than a decade.

In her divorce petition, Ms. Niekamp requested sole parental responsibility for the children, which Mr. Niekamp opposed. Apparently due to his mental health problems, Mr. Niekamp's relationship with the children was strained. During the divorce proceedings Mr. Niekamp was denied a temporary timesharing schedule, but the court granted his motion for a parenting evaluation and appointed a psychologist. In her testimony and written report to the court, the psychologist recounted that she evaluated Mr. Niekamp and diagnosed him with major depressive disorder, anxiety, and an avoidant personality disorder. She observed that his largely untreated condition had damaged his relationships with the children. But she also attributed some of the damage to Ms. Niekamp's animosity toward Mr. Niekamp and to her penchant for inappropriately telling the children about details of the divorce case. The court later granted Mr. Niekamp's motion for a therapeutic reunification with the children. It designated Jason Sabo, Ph.D., to coordinate that process.

In the final judgment the court awarded sole parental responsibility to Ms. Niekamp, finding that shared responsibility would be detrimental to the children. The court further determined that it was in the children's best interests to deny Mr. Niekamp

contact with them for the time being.  He was not granted so much as a weekly phone call with either child, although Ms. Niekamp testified that she had no objection to phone or email contact.  The final judgment then provided:

> The parties are ORDERED to continue to work with their respective therapists and Dr. Jason Sabo on a therapeutic reunification plan, should he find that it is in the best interests of the children.  The Court reserves jurisdiction to readdress this timesharing schedule upon notice by Dr. Sabo that the reunification process has commenced or by Motion of either party.  The Court has considered all criteria in Florida Statutes 61.13 in making this decision.

Mr. Niekamp contends that the trial court improperly delegated its authority over timesharing to the therapists.  His argument finds support in Grigsby v. Grigsby, 39 So. 3d 453 (Fla. 2d DCA 2010), in which this court affirmed an award of sole parental responsibility to the father and a suspension of the mother's timesharing.  But we reversed in part because the circuit court failed to delineate what was required of the mother in order to reestablish her timesharing.

> Essentially, the court must give the parent the key to reconnecting with his or her children.  An order that does not set forth the specific steps a parent must take to reestablish time-sharing, thus depriving the parent of that key, is deficient because it prevents the parent from knowing what is expected and prevents any successor judge from monitoring the parent's progress.

Id. at 457.  See also Perez v. Fay, 160 So. 3d 459 (Fla. 2d DCA 2015) (holding that a final judgment was legally deficient when it failed to advise a parent of the necessary steps to regain contact with the children).  We reverse the amended final judgment insofar as it fails to prescribe any schedule or benchmarks for reestablishing Mr. Niekamp's parenting of the children, and we remand for the trial court to do so.

- 3 -

Mr. Niekamp also challenges the trial court's equitable distribution scheme. He correctly argues that the court erred by classifying Ms. Niekamp's business as a nonmarital asset. See § 61.075(6)(a), Fla. Stat. (2012) (defining marital assets). Ms. Niekamp concedes the error, but she asserts that it is harmless because there was no evidence of value. Beyond that, she contends that the business is based entirely on her goodwill and personal services. Certainly, the business—a music studio primarily offering various types of instruction—depends heavily on Ms. Niekamp's personal expertise and goodwill. But as noted by Mr. Niekamp, the business also has other assets, including tangible assets such as funds in bank accounts and two instructional books that it sells, and perhaps even some enterprise goodwill. See Schmidt v. Schmidt, 120 So. 3d 31, 33 (Fla. 4th DCA 2013) (describing difference between enterprise goodwill, which is a distributable marital asset, and personal goodwill, which is nonmarital).

We reverse on this issue and remand for the trial court to properly characterize the business as marital and to value it for purposes of the equitable distribution, excluding any personal goodwill attributable to Ms. Niekamp. See id.; Walters v. Walters, 588 So. 2d 47, 48-49 (Fla. 2d DCA 1991) (reversing equitable distribution when court awarded business, a marital asset, to husband without assigning a value). In so doing, the court may take additional evidence and readjust other aspects of the equitable distribution if necessary to achieve an equitable result. Given Ms. Niekamp's argument about the lack of evidence regarding the value of the business in the current record, we point out that the failure to present such evidence might well have been to her detriment. When, as here, an asset is acquired during the marriage, it

- 4 -

is presumed to be marital unless specifically established as nonmarital. § 61.075(8). If the trial court had properly classified the business as marital but lacked evidence of its value or of how much of that value might have been attributable to Ms. Niekamp's personal goodwill, the court simply might have granted each party a one-half interest.

Mr. Niekamp further contends that the trial court erred by assigning to his share of the equitable distribution a $25,000 asset that no longer existed. Early in the dissolution proceedings, he withdrew approximately that sum from retirement accounts, which he said that he spent primarily on his attorney's fees. The court ordered him to restore the funds to the accounts, but he never did so. Mr. Niekamp brought a nonfinal appeal challenging the court's refusal to dissolve the temporary injunction, and this court affirmed. Niekamp v. Niekamp, 119 So. 3d 1259 (Fla. 2d DCA 2013) (table decision).

Ms. Niekamp maintains that our decision in Mr. Niekamp's nonfinal appeal forecloses his challenge to this disposition under the law of the case doctrine. She is incorrect for two reasons. First, the prior appeal concerned a *temporary* injunction.

> [T]he law of the case doctrine will not be employed to give preclusive effect to a decision or determination that was based on a less-than-full hearing. . . . Because a decision based on a less-than-full hearing—such as the issuance or denial of a preliminary injunction—is by its very nature provisional, it would be nonsensical to give it binding effect on the subsequent proceedings in the same case. This is true, of course, even where the tentative determination of a trial court has been the subject of interlocutory appellate review.

Klak v. Eagles' Reserve Homeowners' Ass'n, 862 So. 2d 947, 952 (Fla. 2d DCA 2004) (citations and internal quotation marks omitted). Second, Mr. Niekamp did not appeal the injunction itself; he appealed only the trial court's denial of his motion to dissolve the injunction. See Hunter v. Dennies Contracting Co., 693 So. 2d 615, 616 (Fla. 2d DCA

- 5 -

1997) (explaining that motion to dissolve temporary injunction required party to show change of circumstances and, absent such proof, denial of motion would not be abuse of discretion), disagreed with by Minty v. Meister Fin. Grp., Inc., 132 So. 3d 373 (Fla. 4th DCA 2014).

On the merits, then, we conclude that the trial court erred by distributing this nonexistent asset to Mr. Niekamp. "When a spouse depletes marital assets during the pendency of dissolution proceedings to pay for support, living expenses and litigation expenses, it is error to include the assets in the equitable distribution scheme in the absence of misconduct." Austin v. Austin, 12 So. 3d 314, 316-17 (Fla. 2d DCA 2009). "[T]here must be a specific finding of intentional misconduct based on evidence showing that the marital funds were used for one party's 'own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.' " Belford v. Belford, 51 So. 3d 1259, 1260 (Fla. 2d DCA 2011) (quoting Roth v. Roth, 973 So. 2d 580, 585 (Fla. 2d DCA 2008)). Here, there was no evidence or finding of misconduct by Mr. Niekamp. Accordingly, we reverse on this issue and direct the trial court to omit this asset from the equitable distribution and rebalance the distribution accordingly.

We now turn to the support provisions of the judgment. On the question of alimony, a twenty-two-year marriage is presumed to be long term, § 61.08(4), and there is a presumption in favor of alimony when warranted by one party's need and the other party's ability to pay. Schlagel v. Schlagel, 973 So. 2d 672 (Fla. 2d DCA 2008). Ms. Niekamp's counsel acknowledged below that at least a nominal amount should be awarded. But the trial court denied Mr. Niekamp's request for alimony altogether.

When considering the evidence of Mr. Niekamp's need, we note that the psychologist testified that Mr. Niekamp was currently unable to work due to his mental health issues. See § 61.08(2)(c), (e) (requiring consideration of parties' physical and emotional condition and employability in alimony determination). There was ample evidence to support that opinion and none to contradict it. But, remarkably, the trial court concluded that Mr. Niekamp's unemployment was voluntary. Contrary to that finding, there was no evidence to show that this party to a long-term marriage—who had been unemployed for a decade and whose mental health issues were severe enough that the trial court considered him incapable of parenting his children—had the current ability to become gainfully employed, let alone at an income level approaching that required to live at the marital standard.

The trial court pointed to a previous denial of Mr. Niekamp's application for Social Security disability benefits. "Husband applied for Social Security Disability benefits," the court wrote, "however [the application] was denied as the Administration found husband to be capable of becoming gainfully employed." It is true that Mr. Niekamp testified that his Social Security disability application had been denied. But there was no evidence about the reason for the denial. And the court did not otherwise explain how the standards for granting or denying Social Security disability benefits might relate to the purposes of the various forms of alimony contemplated in Florida law or to the criteria for awarding them. In the absence of evidence to support them, we reject the trial court's determinations that Mr. Niekamp was voluntarily un- or underemployed and that he did not establish a need for alimony. Ms. Niekamp's ability to pay alimony was not fully addressed in the final judgment, which observed only that

she could not afford to continue paying some of Mr. Niekamp's expenses under the temporary support order. We reverse and remand with directions to award alimony to Mr. Niekamp in a form and amount commensurate with his need and Ms. Niekamp's ability to pay.

Having concluded that Mr. Niekamp was voluntarily unemployed, the trial court imputed income to him for purposes of calculating child support under section 61.30. For the reasons just described, the imputation of income was error. See G.V.W. v. L.M.W., 785 So. 2d 533 (Fla. 2d DCA 2001). We reverse the child support award and the resulting arrearage determination, and we remand for further proceedings on the issue of child support in light of this opinion.

Mr. Niekamp last argues that the trial court erred in denying his motion for attorney's fees. Because we are reversing on the alimony and equitable distribution, we reverse on this issue as well. See Crick v. Crick, 78 So. 3d 696, 699 (Fla. 2d DCA 2012) (directing trial court to reconsider fee issue after recalculating equitable distribution and alimony awards).

In conclusion, we reverse the timesharing in part; we reverse the equitable distribution, denial of alimony, award of child support, and denial of attorney's fees; and we remand for further proceedings.

Reversed and remanded.


VILLANTI, C.J., and KHOUZAM, J., Concur.