DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBERT W. HIGGINS,**
Appellant,

v.

**KATHY MUSSO HIGGINS** n/k/a **KATHY P. MUSSO,**
Appellee.

No. 4D16-69

[August 23, 2017]

Appeal and cross-appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Laurie E. Buchanan, Judge; L.T. Case No. 11000031DRAXMX.

Troy William Klein of the Law Office of Troy W. Klein, West Palm Beach, for appellant.

Benjamin T. Hodas of the Law Office of Benjamin T. Hodas, LLC, West Palm Beach; and Tara S. Pellegrino of Broad and Cassel LLP, West Palm Beach, for appellee.

CIKLIN, J.

This appeal and cross-appeal arise from an amended final judgment of dissolution of marriage. We agree with the former husband that the trial court erred by (1) failing to assign a value to a business which was deemed marital property, (2) including a dissipated asset in equitable distribution, and (3) failing to provide reasons for its finding that a boat was a marital asset. We also agree with the former wife that the trial court erred in designating as a marital asset all of the proceeds from the sale of a nonmarital property. We otherwise affirm.

The only issues raised at trial and on appeal relate to equitable distribution. We review a trial court's determination of equitable distribution for an abuse of discretion. *Kovalchick v. Kovalchick*, 841 So. 2d 669, 670 (Fla. 4th DCA 2003). "Distribution of marital assets and liabilities must be supported by factual findings in the judgment or order based on competent substantial evidence." *Bardowell v. Bardowell*, 975 So. 2d 628, 629 (Fla. 4th DCA 2008) (citing § 61.075(3), Fla. Stat.). "A

trial court's legal conclusion that an asset is marital or nonmarital is subject to de novo review." *Mondello v. Torres*, 47 So. 3d 389, 392 (Fla. 4th DCA 2010).

For his first issue on appeal, the former husband argues that the trial court erred in awarding a marital asset, a business, to the former wife based on a finding that the business's value is based on personal goodwill of the former wife and without assigning a value to the business (aside from the former wife's goodwill). When there is evidence that a marital business has value aside from one spouse's goodwill, the court must make a finding regarding that value for purposes of equitable distribution. *See Niekamp v. Niekamp*, 173 So. 3d 1106, 1108-09 (Fla. 2d DCA 2015) (reversing and remanding to trial court to value marital property, excluding any goodwill attributable to one party, where there was evidence that the business had other assets).

Although there was evidence that the business had tangible assets, the trial court inexplicably found that no such evidence was offered. The former wife acknowledges that the business is a marital asset, and she appropriately concedes that the asset has a value aside from her goodwill.[1] Accordingly, we reverse and remand to the trial court to value the business for purposes of equitable distribution.

The former husband next contends that the trial court erred in including the parties' 2010 tax refund in its equitable distribution scheme when the refund was dissipated before trial and the trial court did not make a finding of misconduct. We agree. *See Tradler v. Tradler*, 100 So. 3d 735, 740 (Fla. 2d DCA 2012) (recognizing that it is generally error to include assets in equitable distribution which have been dissipated during the dissolution proceedings in the absence of a finding of misconduct). Therefore, we reverse and remand for the trial court to omit the tax refund from its equitable distribution analysis.

The former husband's final point on appeal relates to a boat that he purchased during the marriage to replace one he owned prior to the marriage. He argues that the trial court erred in treating the new boat as a marital asset. During trial, the former husband testified that he purchased the replacement boat using insurance proceeds he received after the premaritally-purchased boat was irreparably damaged. The former wife did not dispute that insurance proceeds related to the premarital boat were used to purchase the second boat. Instead, she testified that the former husband gifted her the new boat as a Christmas

---

[1] The parties dispute the specific value of the business's assets.

gift.

Nonmarital assets include "[a]ssets acquired . . . by either party prior to the marriage, and assets acquired . . . in exchange for such assets." § 61.075(6)(b)1., Fla. Stat. (2011); *see also Steiner v. Steiner*, 746 So. 2d 1149, 1151 (Fla. 2d DCA 1999) (recognizing that properties purchased during the marriage with proceeds from the sale of nonmarital property acquired before the marriage are nonmarital assets "to the extent that their purchase prices were paid with proceeds that are traceable" to the party's sale of that premarital property).

In deeming the new boat to be a marital asset, the trial court stated that the former husband "claims he used" insurance proceeds "to purchase the [new] boat," and it further found that the boat was titled in the former husband's name but currently in the former wife's possession. It is unclear from these findings why the trial court designated the boat as a marital asset. The former wife argues that the trial court made a credibility determination and believed her, but the court did not make any findings relating to the former wife's testimony that the former husband gifted her the new boat. This lack of findings makes review impossible. For that reason, we must reverse and remand for the trial court to either make factual findings that support designation of the new boat as a marital asset or amend the equitable distribution scheme. *See* § 61.075(3)(d), Fla. Stat. (requiring trial court, with respect to equitable distribution, to make "[a]ny other findings necessary to advise the parties or the reviewing court of the trial court's rationale for the distribution of marital assets and allocation of liabilities").

The former wife raises two issues in her cross-appeal. We affirm on one issue and decline to further address it, but we reverse with respect to her claim that the trial court erred in treating as a marital asset all of the proceeds from the sale of nonmarital real property.

The former wife was divorced before marrying the former husband. She and her ex-husband owned what she calls the Bittern Street property. Her parents loaned her $100,000 to buy out her ex-husband's interest in the property. There was conflicting evidence regarding whether her parents held a mortgage on the property. Transcripts of depositions and a pre-trial hearing were entered into evidence. During one deposition, the former wife testified that on the date she married the former husband, her parents held a mortgage on the property. She could not recall whether she made monthly mortgage payments to her parents. In another deposition, she again confirmed that her parents held a mortgage on the property during the parties' marriage. She testified that

she did not make monthly mortgage payments and that the entire loan was paid off with proceeds from the sale of the Bittern Street property. During a pre-trial hearing, the former wife testified that the property carried a mortgage on the date the parties married, and that she used her income during the parties' marriage to make mortgage and tax payments on the property.

At trial, the former wife testified that she borrowed $119,000 from her parents and that her parents did not ever have a mortgage on the property. She introduced into evidence a claim of lien filed by her mother, which reflects that the former wife borrowed $455,000 to "purchase, renovate, and repair [the] dwelling," and that the loan was "to be repaid upon sale and closing of [the Bittern Street property]." According to the former wife, she did not borrow that amount from her parents; rather, that amount represented the value of the property when the former wife divorced her ex-husband. The former wife also introduced a release of claim purported to be signed by her mother in 2000.

The evidence also showed the following. The former wife used marital funds to repair the property from damage it suffered during two hurricanes. She replaced the roof, removed a screen enclosure and wallpaper, painted damaged ceilings, and installed new carpeting in a portion of the home. Some of the repairs were paid for using insurance proceeds.

The parties took out a home equity line of credit utilizing the equity in the Bittern Street property. They used funds from the line of credit to construct the marital home. Subsequently, they took out a "construction loan" utilizing the marital home as security and used those funds to satisfy the line of credit. The Bittern Street property sold during the marriage for $1,050,000. The amount remaining on the mortgage held by the former wife's parents was satisfied with proceeds from the sale. The former wife then deposited proceeds from the sale into a bank account.[2]

According to the former wife, the property depreciated in value during the marriage. It was worth $450,000 when the former wife and her ex-husband divorced, and any appreciation in the property's value occurred before the former wife married the former husband. According to the former husband, the former wife told him at some point that the property

---

[2] The trial court did not find, and the former husband does not argue on appeal, that the funds were commingled with marital funds in the bank account.

was worth $1,000,000 when the parties were married.

The trial court found that all of the proceeds from the sale constituted a marital asset. The trial court provided the following reasons for designating the proceeds as a marital asset: (1) the former wife used marital funds to pay down the mortgage and make repairs to the property; (2) the former wife had the burden to establish whether any part of the enhanced value is exempt from distribution and failed to meet her burden; (3) the equity in the Bittern Street property was used to obtain a line of credit, the funds from which were used to construct the marital home; and (4) the parties took out a loan using the marital home as security and used loan funds to satisfy the line of credit. Based on these factors, the trial court found that the "parties absolutely, positively commingled these assets," and "[a]s such, the value of the Bittern home is a marital asset."

Marital assets include "[t]he enhancement in value and appreciation of nonmarital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both." § 61.075(6)(a)1.b., Fla. Stat. Additionally, an increase in the equity value of property is a marital asset subject to equitable distribution. *Somasca v. Somasca*, 171 So. 3d 780, 782 (Fla. 2d DCA 2015). "However, improvements or expenditures of marital funds to a nonmarital asset does not transform the entire asset into a marital asset; rather, it is only the 'enhancement in value and appreciation' which becomes a marital asset." *Martin v. Martin*, 923 So. 2d 1236, 1238-39 (Fla. 1st DCA 2006) (quoting *Strickland v. Strickland*, 670 So. 2d 142, 143 (Fla. 1st DCA 1996)).

The party asserting entitlement to an increase in the value of nonmarital property has the burden of proving the enhancement. *Robertson v. Robertson*, 78 So. 3d 76, 77 (Fla. 5th DCA 2012). Once a party establishes that marital labor or funds were used to enhance the nonmarital property's value, the burden shifts to the other party to show that some, if any, portion of the enhanced value is exempt from equitable distribution. *Yitzhari v. Yitzhari*, 906 So. 2d 1250, 1254 (Fla. 3d DCA 2005).

"[T]o make an award for the enhancement in value and appreciation of a nonmarital asset, the court must make specific findings as to the value of such enhancement and appreciation during the marriage, as well as which portion of that enhanced value is attributable to marital funds and labor." *Martin*, 923 So. 2d at 1239. "When improvements are made to

5

real property, the court should make findings regarding the current value of the property and the value of the property prior to the marital enhancements. The court should then make findings regarding the amount of the appreciation that was attributable to the marital enhancements." *Hall v. Hall*, 962 So. 2d 404, 405 (Fla. 2d DCA 2007) (citations omitted).

Here, there was scant evidence regarding the enhanced value of the Bittern Street property. The former wife testified that the value depreciated between the parties' marriage and the date the property was sold. The former husband testified that the former wife told him the property was worth $1 million when the parties married. The property sold for $1,050,000. Additionally, although any increase in equity due to mortgage payments made by the former wife using marital funds would be subject to equitable distribution, there was no evidence as to the amount by which the equity increased.

Instead of taking additional evidence and making the required findings as to enhanced value, the trial court designated as a marital asset all of the proceeds from the sale of the Bittern Street property. On remand, after taking additional evidence, the trial court must make findings as to the enhanced value of the property, including any increase in equity that is due to the former wife's use of marital funds to pay down the mortgage held by her parents. *See id.* at 406 (observing that on remand, trial court "may take additional evidence if necessary to determine the value of the marital asset"). After taking additional evidence, if the trial court finds that the former husband has established the amount of increase in value and equity from the date of marriage to the sale date, the former wife will then have the burden of showing that any portion of those respective increases were not due to marital contribution.

The trial court's finding of commingling was also based on the use of the Bittern Street property to obtain a line of credit from which funds were used to construct the marital home, and the use of marital funds to satisfy that line of credit. We agree with the former wife that the use of her nonmarital property to obtain the line of credit was not, standing alone, reason to deem the proceeds of the sale of the Bittern Street property a marital asset. *See Fashingbauer v. Fashingbauer*, 19 So. 3d 401, 402 (Fla. 1st DCA 2009) (finding that husband's use of nonmarital property to obtain a line of credit used to purchase marital property did not transform nonmarital property into marital property). We also agree

that the use of marital funds to satisfy a marital debt[3] secured by the nonmarital property did not transform the entire value of the Bittern Street property into a marital asset. Nor do we find, under these circumstances, that all of the factors considered by the trial court, taken together, constituted a commingling of marital and nonmarital assets. It is not apparent to us that the Bittern Street property lost its nonmarital character. Instead, it simply appears that the former husband is entitled to a share of any enhanced value and equity in the property. The amount of the enhancement and the share to which the former husband is entitled remains to be determined.

The former wife also argues that the trial court erred in finding there was a mortgage on the property. We find that the trial court did not err in rejecting the former wife's contention that there was no mortgage on the property where there was a conflict in the evidence on this point.

Based on the foregoing, we affirm in part, reverse in part, and remand. On remand, the trial court must make additional findings regarding the boat. After taking additional evidence, it must make the required findings regarding any enhanced overall and equity value in the Bittern Street property. The trial court shall further amend the final judgment consistent with this opinion and modify the equitable distribution scheme to the extent necessary.

*Affirmed in part, reversed in part, and remanded for further proceedings.*

DAMOORGIAN, J., and HANZMAN, MICHAEL A., Associate Judge, concur.

*    *    *

**Not final until disposition of timely filed motion for rehearing.**

---

[3] The former husband does not dispute the former wife's contention that the line of credit was a marital debt.