DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RICHARD LAWRENCE BERNSTEIN,**
Appellant,

v.

**CYNTHIA JUDITH BERNSTEIN,**
Appellee.

No. 4D21-2480

[April 19, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Scott Ryan Kerner, Judge; L.T. Case No. 50-2019-DR-010056-XXXX-SB.

Steven M. Pesso of Steven M. Pesso, P.A., Boca Raton, for appellant.

Keith W. Meisel of Keith W. Meisel, P.A., North Palm Beach, for appellee.

FORST, J.

Appellant Richard Lawrence Bernstein ("Former Husband") appeals the trial court's amended final judgment of dissolution of marriage between him and Appellee Cynthia Judith Bernstein ("Former Wife"). The Husband argues on appeal that the trial court erred in (A) classifying the parties' residence as a marital asset for purposes of equitable distribution; (B) awarding Former Wife more than a 50/50 split of the proceeds from Former Husband's trade-in of his Corvette; and (C) awarding an excessive permanent alimony award.

We affirm the trial court on issue (A), writing to explain that the court reached a correct result on the equitable distribution with respect to the marital home notwithstanding a flawed analysis of the issue. We agree with Former Husband on issue (B) that the trial court's decision to give Former Wife a greater than 50/50 credit for the Corvette's trade-in proceeds was unsupported by competent substantial evidence and thus remand for the trial court to modify its final judgment on this issue. Finally, we affirm the trial court's alimony award without discussion, noting Former Husband failed to identify an error clearly appearing on the record.

## Background

The parties were married for more than twenty years, until Former Husband petitioned for dissolution of marriage in 2019. In 1994, approximately three years prior to the marriage, Former Husband and his mother purchased a home in Boca Raton, where the parties resided as husband and wife for twenty-two years ("the marital home"). Former Husband paid $445,000 in cash for the marital home, and it was and remains titled in his and his mother's names.

Based on testimony from, primarily, Former Husband's witnesses, the trial court set the current value of the marital home at $1.25 million. The witnesses attributed the significant increase to "passive appreciation," as the home was waterfront property, in a neighborhood where many of the original homes had been torn down and replaced by new homes. Former Wife argued that the marital home was not a "tear-down," and the $1.25 million appraisal was attributable in large part to active appreciation. She presented evidence of her efforts to maintain and improve the home—she personally climbed on the roof and fixed it, cleaned the gutters, fixed the pavers, took out 500 feet of tile with a chisel and hammer, performed garden work and cleaned the pools. Former Husband listed her on renovation permits for the property. Additionally, Former Wife contributed significant personal money in improving the marital home. Specifically, Former Wife used $75,000 from a personal injury settlement to renovate the marital home. The home and surrounding grounds were also generally maintained with marital funds.

In its final judgment of dissolution, the trial court made several findings challenged in the instant appeal. First, it determined that the marital home was worth $1.25 million and that it was a marital asset subject to equitable distribution. The court found that "[i]t is disingenuous for [Former Husband] to reap the benefits of [Former Wife's] 25 years of toils, work and financial contribution for the upkeep and improvement of the marital home, including money from her personal injury lawsuit, yet be able to avoid equitable distribution of the asset." The court determined there was "donative intent" to make the marital home a marital asset. The trial court alternatively concluded that, "[e]ven if there was no donative intent, the nonmarital nature became lost during the 20 plus years of marriage based upon the parties' actions and inaction." Finally, the trial court gave Former Husband a $445,000 credit for the marital home in acknowledgment of Former Husband's pre-marriage purchase of the home for that amount.

2

The trial court equitably distributed the remaining $805,000 of the value of the marital home and other marital assets. One such asset was Former Husband's Corvette that he had traded in for $15,150 in cash. Specifically, the trial court awarded Former Wife a $9,000 credit for Former Husband's Corvette trade-in. The court did not provide an explanation for the $9,000 figure. This timely appeal followed.[1]

## Analysis

On appeal, Former Husband challenges (A) the trial court's classification of the marital home as a marital asset and its inclusion in the equitable distribution scheme, and (B) the trial court's award of a $9,000 credit to Former Wife with respect to the Corvette's trade-in value. He also contests the amount of the trial court's alimony award. As noted above, we affirm the trial court's alimony award without further discussion.

### A. The Marital Home

Former Husband argues that the trial court erroneously classified the home as a marital asset, because he purchased it with premarital funds, it was titled in his and his mother's names, and it was not a gift. He further argues that the trial court erred by attributing $805,000 to equitable distribution, because Former Wife did not present evidence that improvements to/money spent on the home increased its value.

> We review a trial court's determination of equitable distribution for an abuse of discretion. *Kovalchick v. Kovalchick*, 841 So. 2d 669, 670 (Fla. 4th DCA 2003). "Distribution of marital assets and liabilities must be supported by factual findings in the judgment or order based on competent substantial evidence." *Bardowell v. Bardowell*, 975 So. 2d 628, 629 (Fla. 4th DCA 2008) (citing § 61.075(3), Fla. Stat.). "A trial court's legal conclusion that an asset is marital or nonmarital is subject to de novo review." *Mondello v. Torres*, 47 So. 3d 389, 392 (Fla. 4th DCA 2010).

*Higgins v. Higgins*, 226 So. 3d 901, 903–04 (Fla. 4th DCA 2017).

The standard of review as to "whether donative intent existed to render an asset an interspousal gift and part of the marital estate is 'competent,

---

[1] Despite filing a notice of cross-appeal, Former Wife never filed a cross-initial brief.

substantial evidence.'" *Hooker v. Hooker*, 220 So. 3d 397, 404 (Fla. 2017). "[A]ppellate courts are to defer to trial courts' findings of whether disputed property is marital or nonmarital." *Id.*

In dissolution of marriage cases, section 61.075(1), Florida Statutes (2019), requires a trial court to equitably distribute the parties' marital assets and to start by determining whether an asset is marital or nonmarital. We begin by acknowledging that Former Husband (1) purchased the marital home with his own funds prior to the parties' marriage, and (2) titled it solely in his and his mother's names. Clearly, the marital home was not a marital asset under section 61.075 when the parties married in 1997. *See Young v. Young*, 606 So. 2d 1267, 1270 (Fla. 1st DCA 1992).

The trial court found that the marital home became marital property because of an interspousal gift, citing *Hooker* in support. Alternatively, the trial court found that even if no donative intent supported an interspousal gift finding, the marital home lost its nonmarital character due to the passage of time and the commingling of marital funds and efforts. Recognizing Former Husband's initial pre-marriage purchase of the property, the trial court gave him credit for the purchase price.

*Hooker* involved whether a husband had donative intent to make two properties marital assets. The husband and wife "had independent sources of income from family inheritances, and they maintained independent finances throughout the marriage." *Hooker*, 220 So. 3d at 399. The husband purchased the two properties at issue with his own funds during the marriage, and both were titled solely in his name. *Id.* at 400–01. However, the trial court determined that both properties "were and should be considered joint marital assets of the Husband and Wife in equitable distribution by [the trial court], the way they were considered joint marital assets by the parties as they lived and raised a family in these 'assets.'" *Id.* at 400. The trial court found that the husband made interspousal gifts of interests in the properties to the wife and that their actions showed joint ownership. *Id.* at 401.

However, in recognition of the husband's significant financial contributions, the trial court found that an unequal distribution was warranted. *Id.* Thus, the trial court awarded the husband with 66% and 75% interest in the two properties. *Id.* The Florida Supreme Court determined that competent, substantial evidence "existed to support the trial judge's conclusion that both properties at issue were marital assets under section 61.075, Florida Statutes." *Id.* at 407.

4

The trial court in the instant case reached a similar conclusion, determining the marital home was considered and treated as a marital asset during the parties' marriage. However, no evidence supports a finding that Former Husband had donative intent regarding the home's pre-marriage value. "[I]mprovements or expenditures of marital funds to a nonmarital asset does not transform the entire asset into a marital asset; rather, it is only the 'enhancement in value and appreciation' which becomes a marital asset." *Martin v. Martin*, 923 So. 2d 1236, 1238–39 (Fla. 1st DCA 2006) (quoting *Strickland v. Strickland*, 670 So. 2d 142, 143 (Fla. 1st DCA 1996) (Joanos, J., concurring in part and dissenting in part)).

To the extent that the trial court found otherwise, such a determination was neutralized by the trial court providing Former Husband with a "credit" for the $445,000 which he had paid for the property. Like the trial court in *Hooker*, the trial court here found that an unequal distribution was warranted. Ultimately, Former Husband was credited with 67.8 percent of the $1.25 million appraised value of the home ($445,000, his purchase price, plus half of the $805,000 appreciation).

This leaves the issue of whether the appreciation in the home's value during the twenty-two-year marriage can be considered a "marital asset" for purposes of equitable distribution.

> [A] trial court errs in refusing to distribute equitably the appreciated value of the marital home caused by inflation, market conditions, or improvements made on a residence during the marriage, even though the home may itself be the separate property of one spouse.
>
>    . . . .
>
> . . . Once the wife established that marital funds or labor were used to make the improvements to the home, it was the husband's burden to show whether any part of the enhanced value was exempt from distribution because [it was] "unrelated to either marital party's management, oversight, or other contribution, but instead due solely to purely passive appreciation of the original asset."

*Young*, 606 So. 2d at 1270 (quoting *Sanders v. Sanders*, 547 So. 2d 1014, 1016 (Fla. 1st DCA 1989)).

Section 61.075(1), Florida Statutes (2019), provides that "in distributing the marital assets and liabilities between the parties, [absent

5

a justification for an unequal distribution,] the court must begin with the premise that the distribution should be equal." *Kaaa v. Kaaa*, 58 So. 3d 867, 870 (Fla. 2010) (quoting § 61.075(1), Fla. Stat. (2007)), *superseded by statute on other grounds*, Ch. 2018-56, Laws of Fla., *as recognized in Matyjaszek v. Matyjaszek*, 255 So. 3d 372, 374 (Fla. 4th DCA 2018). "[T]he passive appreciation of a nonmarital asset, such as [a] marital home, is properly considered a marital asset where marital funds or the efforts of either party [during the marriage] contributed to the appreciation." *Id.* "While these contributions need not be strictly monetary and may include marital funds or the efforts of either party, they must enhance the value of the property." *Id.* at 871. "Such findings are to be made by the trial court based on evidence presented by the parties." *Id.* at 870.

Here, Former Husband essentially argued that the appreciation in the appraised value of the marital home was due *solely* to purely passive appreciation of the original asset. The trial court rejected this argument, which was premised on the contention that the home would be torn down, and the court noted that Former Husband planned to continue living in the home. The court further found Former Wife "was maintaining the home, raising a family . . . paying for the upkeep of the home from marital funds and [Former Husband was] benefitting from her $75,000 in settlement money to improve the home." Because Former Husband argued that Former Wife made no contribution to the marital home's enhanced value, he put all his eggs in the "house will be torn down" basket, and failed to meet the burden under *Young* to show any part of the home's enhanced value was exempt from distribution. We thus affirm the trial court with respect to its determination that Former Wife receive equitable distribution credit for half of the estimated appreciation of the marital home's value.

*B. The Corvette*

We agree with Former Husband that the trial court erred when it awarded Former Wife more than fifty percent of the $15,150 which Former Husband received for the trade-in of his Corvette. The trial court erred when it awarded Former Wife a $9,000 credit, rather than fifty percent of $15,150 ($7,575). On remand, the trial court shall award each party an equal split of the Corvette's trade-in proceeds.

**Conclusion**

For the foregoing reasons, we affirm the trial court's equitable distribution award and its alimony award. However, we remand with

6

instructions for the trial court to award each party an equal split of the Corvette's trade-in proceeds.

*Affirmed in part, reversed in part, and remanded with instructions.*

CIKLIN, J., concurs in part and dissents in part with opinion.
WARNER, J., concurs in part and dissents in part with opinion.

CIKLIN, J., concurring in part and dissenting in part.

I concur with the entirety of the majority opinion save for that portion pertaining to "B. The Corvette." I would affirm the trial court as to any findings pertaining to the Corvette, specifically including part IV (e) of the Final Judgment entitled "Automobiles."

WARNER, J., concurring in part and dissenting in part.

While I concur in the affirmance of the alimony award and reversal of the Corvette credit, I dissent from the majority's affirmance of the equitable distribution of the marital residence. In my view, the majority opinion misapplies *Hooker v. Hooker*, 220 So. 3d 397 (Fla. 2017). The length of time during which the married parties lived, maintained and improved the residence cannot alone establish donative intent to convey to a spouse an interest in a marital residence titled in the name of the other spouse, and purchased prior to the marriage. *See id.* at 406. Further, neither *Hooker* nor any other case which I can find concludes that donative intent can be found only for the value of a passive appreciation of the property, as the majority does in this case in finding that no donative intent can be found for the initial purchase funds made prior to marriage.

The majority's analysis fits more closely to a finding under section 61.075(6)(a)1.b., Florida Statutes (2019), of an enhancement in value of a non-marital asset. However, no evidence here demonstrates any enhanced value from improvements made to the property to which the former wife may have contributed. Even if the trial court could find some enhancement, the court must apply the statutory formula from section 61.075(6)(a)1.c., Florida Statutes (2019), to determine the marital portion of the appreciation.

The majority correctly notes *Hooker* held that the standard for reviewing a trial court's finding of donative intent of a spouse to gift property to the other spouse is whether it is supported by competent substantial evidence. 220 So. 3d at 399. However, the majority overlooks that standard's application in *Hooker*, and ignores *Hooker*'s acknowledgment that a

7

spouse's mere access to the marital residence and "autonomy in residing, maintaining, and improving [the marital residence]" is insufficient to prove donative intent of an interspousal gift for purposes of equitable distribution in a dissolution of marriage. *Id.* at 406.

*Hooker*'s facts shows how it supports reversal in this case. In 1989 during the marriage, the husband in *Hooker* had purchased vacant land with nonmarital funds, based upon a recommendation from the former wife's father that the property would be a good investment. *Id.* at 400. The wife and husband took out a mortgage to build on the property, and twenty years later the property consisted of a working horse farm with sixteen stalls, riding rings, and two wings on the barn, one of which was the marital residence and the other were staff apartments. *Id.* In 1997, the husband transferred the property by warranty deed into a corporation to hold title to the entire property. *Id.* at 405. He then sold a half interest in the corporation to another family who exercised an option to purchase the other half in 2010. The wife filed for divorce when she discovered that the husband did not intend to share any of the proceeds with her. *Id.*

The Florida Supreme Court determined that the totality of the evidence supported a donative intent of the husband. The Court pointed to the transfer of the property to the corporation as the most significant indication of intent because the corporation, formed during the marriage, became a marital asset. 220 So. 3d at 406. Therefore, when the property was transferred into the corporation, the property too became a marital asset. Also, "[b]efore selling [the horse farm residence], Husband told Wife that it was in their best interests to convey [the property] to [the corporation.]." *Id.*

The Court concluded its analysis by showing that a combination of factors created the competent substantial evidence of donative intent:

> **While one factor independently—such as** Wife signing the Warranty Deed or being listed on the mortgage, or **Wife's unfettered access to and autonomy in residing, maintaining, and improving [the marital residence]—does not establish an interspousal gift for purposes of equitable distribution in a dissolution of marriage**, viewing Husband's actions comprehensively leads us to conclude that competent, substantial evidence supports the trial court's finding that [the marital residence] was an interspousal gift, of which Husband intended to divest himself of complete dominion and control to his Wife.

8

*Id.* (Emphasis added.)

As to a second piece of property which served as the family's summer home, also purchased in the husband's name with nonmarital funds, the *Hooker* court found that the husband established donative intent when he sent the wife a "Happy Anniversary" card with a picture of the house on it. *Id.* at 407.

In this case, the trial court relied only on the wife's use of the home and her contribution to it as establishing donative intent. The court found:

> [T]he Wife was maintaining the home, raising a family, and paying money for the improvement of the marital residence[,] entitl[ing] her to an interest in the property upon Equitable Distribution. Moreover, the Husband's actions, such as giving Wife keys to the home, placing her on permits for improvements, paying for the upkeep of the home from marital funds and benefiting from her $75,000 in settlement money to improve the home, indicates an intent for the real property **to be their marital home, and therefore subject to equitable distribution.**

(Emphasis in original). The trial court relied on the "Wife's unfettered access to and autonomy in residing, maintaining, and improving [the marital residence]," which *Hooker* stated was insufficient to show donative intent. *See id.* at 406. In addition, the court here seemed to equate donative intent with an intent that the property be the marital residence—a belief that a marital residence is always a marital asset. That is not what *Hooker*, or any other case, holds.

We have previously held that the improvement of nonmarital property with marital funds does not make the property a marital asset:

> [T]he act of maintaining or expending marital assets to maintain or improve the cottage did not result in a conversion. *See Martin v. Martin*, 923 So. 2d 1236, 1238–39 (Fla. 1st DCA 2006) ("[I]mprovements or expenditures of marital funds to a nonmarital asset does not transform the entire asset into a marital asset; rather, it is only the 'enhancement in value and appreciation' which becomes a marital asset.") (citing *Strickland v. Strickland*, 670 So. 2d 142, 143 (Fla. 1st DCA 1996)).

9

*Macleod v. Macleod*, 82 So. 3d 147, 149 (Fla. 4th DCA 2012). Similarly, a spouse's contribution to the marital residence does not make the residence a marital asset. *See Belmont v. Belmont*, 761 So. 2d 406, 408 (Fla. 2d DCA 2000) (reversing award of home to wife where home was owned by husband prior to marriage and undisputed evidence showed that vast majority of appreciation of property was passive and only minor amount was attributable to marital efforts, and directing that only amount of nonpassive appreciation should be treated as a marital asset on remand). As *Hooker* stated, "[the] [w]ife's unfettered access to and autonomy in residing, maintaining, *and improving* [the marital residence]—does not establish an interspousal gift for purposes of equitable distribution in a dissolution of marriage." 220 So. 3d at 406 (emphasis added).

The majority's other reasons do not provide competent, substantial evidence of donative intent either. No evidence in the record supports the trial court's finding that the husband placed the wife's name on permits, as the record contains neither permits nor any testimony showing that both names were on the permits. While the trial court credited the wife's testimony that she used a $75,000 settlement to make improvements on the home, that does not show *the husband's* donative intent, but merely shows her contribution to a nonmarital asset.

Instead of treating the home as marital as a result of a gift, the court was required to consider whether the wife was entitled to a share of the enhancement of value pursuant to section 61.075(6)(a)1.b., based upon her contributions. Unlike the majority, I conclude that the husband did not put "all his eggs in one basket." The husband claimed that the property was nonmarital and he was entitled to all the appreciation of the property, because none of the improvements enhanced its value, as his real estate expert testified that the property value was in the land because the house was a "tear down." As an alternative, he claimed that the wife would only be entitled to the appreciation to the property from the application of marital funds as set forth in the statute.

Section 61.075(6)(a)1.c.(V), Florida Statutes (2019), requires a court to apply a specific formula for determining what portion of appreciation by contribution of marital funds to nonmarital assets constitutes a marital asset. The formula first calculates "passive appreciation" by deducting the property's value at the date of marriage or its later acquisition from its valuation date in the dissolution action and less any active appreciation, which is defined as any contribution of marital funds by either party. § 61.075(6)(a)1.c.(I), Fla. Stat. (2019). A "coverture fraction" is then calculated using the amount of mortgage payments on the property during the marriage as the numerator and the property's value on the date of the

marriage as a denominator. § 61.075(6)(a)1.c.(II), Fla. Stat. (2019). In this case, the coverture fraction is zero, because no mortgages were placed on the property and thus no coverture passive appreciation. The total marital appreciation is then calculated as the sum of the passive appreciation plus the active appreciation. § 61.075(6)(a)1.c.(IV), Fla. Stat. (2019).

While the husband's primary contention at trial was that the property value had no appreciation due to any improvements during the marriage, he also provided testimony of an alternative method of determining the marital portion of appreciation. Applying the statutory formula, his real estate expert testified that the property's value was $1.25 million. The husband's CPA expert valued the home as of date of marriage at $500,000, and the parties made improvements costing $51,826 during the marriage. By following the statutory formula, the husband's expert determined that the passive appreciation attributable to the coverture fraction was zero. Thus, the property's marital portion was the active appreciation's value, or $51,826, and each spouse would receive half as their share of active appreciation. The husband did, therefore, provide an alternative calculation based upon the statute. The court did not make this calculation, because it found that the entire property was marital.

Despite minimal support in the record, the court apparently believed the wife's claim that she contributed $75,000 to the improvements in the home, thus rejecting the husband's expert's documented active appreciation figure of $51,826. As the settlement proceeds were received during marriage, those funds would be a marital asset. *See Roth v. Roth*, 312 So. 3d 1021 (Fla. 2d DCA 2021). The parties do not dispute this, and the wife's CPA treated the settlement funds as marital funds. Therefore, if the court credited the improvements at $75,000 as the active appreciation instead of the husband's figure, then the formula would require that each spouse receive credit for half of it, or $37,500.

In any event, I conclude that no competent, substantial evidence shows the husband's donative intent regarding the marital residence. The wife may be entitled to a share of the active appreciation in the residence, but the court erred in distributing fifty percent of the passive appreciation to the wife. I would reverse and remand for the court to follow the statute.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***

11