POLEN, J.
 

 Appellant, Dogan Bengisu, appeals the trial court’s non-final order awarding his wife and Appellee, Renee Bengisu temporary child support and alimony. Husband and wife were married in 1997 and have two children, born in 1998 and 2001. On May 30, 2008, wife filed a petition for dissolution of marriage with minor children.
 

 On September 9, 2008, wife filed a motion for temporary relief seeking shared parental responsibility, designation as the primary residential parent, temporary periodic alimony, temporary exclusive use and possession of the marital residence, child support, the maintenance of her and the children’s health and dental insurance, and attorney’s fees. The trial court held an initial hearing on wife’s motion on November 19, 2008 and continued that hearing on December 12, 2008.
 

 Prior to the second hearing, husband filed a motion for temporary relief on December 8, 2008 seeking open and liberal timesharing with the children pursuant to the Model Timesharing Schedule for Parents Who Reside No More than 45 Miles Apart, contribution to the children’s support from wife, imputed income for the wife, the transfer to husband of $10,000 of the $20,000 withdrawn from the home equity line of credit by wife, and a monthly payment of the fair rental value of the marital residence. Husband also filed a Proposed Temporary Parental Responsibility and Temporary Timesharing Schedule. Husband’s motion for temporary relief was heard in conjunction with wife’s motion on December 12, 2008.
 

 Wife’s financial affidavit stated that she was unemployed and claimed total monthly expenses of $11,898.00. The affidavit also listed her net worth as $744,123.00. Husband’s financial affidavit stated that he was a lawyer employed as a solo practitioner, that his office had just reopened after being closed for four months, and that his pay was based on the income of his office. Husband listed gross monthly income of $3031.00, net monthly income of $2585.00, total monthly expenses of $4886.58, and a monthly deficit of $2720.29. Finally, husband listed a net worth of $322,230.00.
 

 Both wife and husband listed a home equity line of credit on them affidavits. Husband’s affidavit indicated that the home equity line of credit balance was $47,659.21 and that he made a monthly payment of $476.59. Wife testified that she had withdrawn $20,000 from the home equity line of credit which she had spent on household expenses, caring for the children, legal fees and paying her accountant.
 

 Wife testified that her household had around $12,600 in monthly expenses, that throughout the marriage husband was responsible for all of the expenses, that bills had never been left unpaid, and that she did not believe the couple had ever accrued any debt to cover their monthly obligations. Wife testified that during the marriage, she was never clear how much husband was earning. Wife stated that husband left his solo practice to work for a law firm for four months leading up to the divorce and, while there, his salary was $85,000.
 

 Wife’s accountant, William Mitchell, testified that he had been retained by wife to ascertain whether the discovery responses provided by husband were accurate but that he was not a certified forensic accountant. Mitchell testified that based on his review of wife’s financial affidavit and household expenses, he believed she needed $5,500 undifferentiated monthly support
 
 *285
 
 during the pendency of the divorce. Mitchell explained that husband’s 2006 and 2007 tax returns stated income of $42,505 and $48,115, respectively but that he did not believe the returns accurately reflected husband’s income for those two years.
 

 Husband testified that his law practice had a gross annual income of between $70,000 and $80,000 and had net income of between $25,000 and $42,000. Husband stated that his big client, who represented two-thirds of his monthly income, died in 2005 after which his income had significantly decreased. Husband stated that the family accrued $3,000-$5,000 of debt per year, that his clients did not pay him in cash, and that his $85,000 salary while at the law firm just before the divorce was the highest salary he had earned in his life. Despite listing a monthly deficit of $2,270, husband only had $6,750 in credit card debt, $5,000 of which was spent on wife’s attorney’s fees. Husband explained that his parents had helped them with their expenses in previous years, that they were currently unable to help them, and that he had an additional $6,000 of credit card debt which he had neglected to list on his affidavit.
 

 Husband’s forensic accountant, Alan Wagner, testified that husband’s current gross monthly income from all sources was $3,221.00 which was similar to his historical income. Wagner stated that husband ran a one-man law office and that he had reviewed husband’s business ledgers, bank accounts, and cancelled cheeks in reaching his determinations. Wagner explained that there was no indication that any of husband’s clients paid him in cash, that all of his current clients were businesses, and that businesses typically paid all of their expenses by check. Husband had been paying the entire first mortgage and home equity line of credit on his own but within the two months prior to the hearing had been unable to afford the home equity line of credit payments.
 

 The parties both informed the court that they had agreed to husband’s proposed timesharing schedule. In its order awarding wife temporary support, the trial court found:
 

 During the history of the intact marriage, the Husband was exclusively responsible for the payment of all the parties’ individual and household expenses. The Court finds he is underemployed based upon his historical earnings. Further the Court was persuaded by the evidence the parties had historically paid their ongoing monthly expenses without accruing debt.
 

 Thus, the court entered an order requiring the parents to use the Model Parental Timesharing Schedule for Parents Who Live within 45 Miles of Each Other when they do not otherwise agree, ordering husband to continue paying the mortgage, taxes, and insurance for the marital residence, allowing wife to continue to exercise exclusive use and possession of the marital residence, awarding wife undifferentiated support in the amount of $5,500 per month, requiring husband to pay wife’s attorney’s fees, and requiring husband to maintain the family’s major medical insurance coverage. The court also permitted each party to use $10,000 of the remaining $20,000 home equity line of credit.
 
 [1]
 
 Husband now timely appeals.
 

 Husband argues that the trial court erred in awarding wife temporary alimony and child support in the amount of $5,500 per month because the award ex
 
 *286
 
 ceeds his monthly income, the court made no findings as to husband’s monthly net income, and the court lacked competent substantial evidence to impute additional income to husband. Wife replies that there was no error because the evidence showed that husband was not reporting all of his income and that her monthly expenses required an award of $5,500 undifferentiated monthly support. “[Temporary relief awards are among the areas where trial judges have the very broadest discretion, which appellate courts are very reluctant to interfere with except under the most compelling of circumstances.”
 
 Pedraja v. Garcia,
 
 667 So.2d 461, 462 (Fla. 4th DCA 1996). In determining whether and to what extent temporary alimony is required, the trial court must consider the needs of the spouse requesting the alimony and the ability of the other spouse to pay alimony.
 
 Stern v. Stern,
 
 907 So.2d 701, 702 (Fla. 4th DCA 2005). Finally, both the requesting spouse’s need and the other spouse’s ability to pay must be supported by competent, substantial evidence.
 
 Driscoll v. Driscoll,
 
 915 So.2d 771, 773 (Fla. 2d DCA 2005).
 

 There was evidence below that husband had historically paid the couple’s monthly expenses without accruing debt, and the trial court found, accordingly, that husband was underemployed and should continue to be responsible for the monthly expenses of the family. However, there was also evidence that the couple’s parents had helped them financially in the past, were unable to continue helping them, and that husband had recently reestablished his solo law practice. Wife’s accountant stated that he believed husband’s actual income exceeded his stated income, and husband’s accountant testified that he believed husband’s stated income was accurate.
 

 Husband’s financial affidavit reflects a monthly deficit of nearly $3,000, and the trial court awarded wife undifferentiated support in the amount of $5,500. Despite evidence that husband had historically made sufficient income to pay the family’s expenses, the trial court abused its discretion in awarding monthly support which greatly exceeds husband’s monthly income without competent substantial evidence that husband’s actual monthly income exceeds his stated monthly income.
 

 Moreover, the trial court failed to make specific findings indicating the source and amount of husband’s imputed income.
 
 Schram v. Schram,
 
 932 So.2d 245, 249 (Fla. 4th DCA 2005) (‘When imputing income to a party, the trial court must set forth factual findings as to the probable and potential earnings level, source of imputed and actual income, and adjustments to income.”). Therefore, we reverse and remand for the trial court to make the necessary findings based on competent substantial evidence of husband’s income and to award an appropriate amount of temporary support based on those findings. Whether additional testimony and evidence is required or whether the current record contains sufficient evidence, we leave for the trial court to determine.
 

 Reversed and remanded.
 

 STEVENSON and DAMOORGIAN, JJ., concur.
 

 [1]
 

 . Here, the trial court's order ignores the fact that the home equity line of credit does not have $20,000 remaining. The credit line was for $50,000 and husband’s affidavit and testimony reveal that the current balance is $47,659.21.