DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOSHUA S. WINEGAR,**
Appellant/Cross-Appellee,

v.

**GABRIELLE D. WINEGAR,**
Appellee/Cross-Appellant.

No. 4D2024-2076

[April 29, 2026]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Joseph Murphy, Senior Judge; L.T. Case No. 502019DR011563XXXXSB.

Jay Mitchell Levy of Jay M. Levy, P.A., Miami, for appellant/cross-appellee.

Sara Jennifer Singer of Singer Family Law, Pompano Beach, and Erin Pogue Newell of Open Book Appeals, Fort Lauderdale, for appellee/cross-appellant.

LOTT, J.

Under Florida Family Law Rule of Procedure 12.530(a), "[t]o preserve for appeal a challenge to the failure of the trial court to make required findings of fact in the final judgment, a party must raise that issue in a motion for rehearing under this rule." Fla. Fam. L. R. P. 12.530(a) (2024).

This appeal from a final judgment of dissolution of marriage highlights the usefulness of Rule 12.530(a)'s preservation requirement. The rule recognizes the impossibly busy dockets that circuit courts face, family divisions being no exception. Errors creep in to even the most diligent judges' orders. The rule gives trial judges a mulligan.

The trial court's final judgment in this case was facially deficient in a number of respects—failing to identify and distribute certain assets, failing to make sufficient factual findings, and math errors. But these errors were timely brought to the trial court's attention in a Rule 12.530 motion for rehearing. No harm, no foul—yet.

The trial court, being presented with these concerns in the motion, could have, and should have, taken heed of these identified errors and issued a corrected judgment.  Instead, the trial court summarily denied the motion.  Now we have error.

We fully appreciate that litigants frequently abuse opportunities to seek rehearing or reconsideration by merely rearguing matters that have already been properly considered and rejected.[1]  But that does not mean that motions for rehearing are presumptively deniable or may be taken with a grain of salt.  Trial courts would be wise to give due consideration to such motions, particularly where they raise issues of failure to make required findings or address certain issues, so that time and money may be better spent than in the appellate court.

We divide our opinion into two parts.  First, we identify and reverse those errors that sound in failure to make certain findings.  Second, we address the only legal error raised in the appeal, concerning the marital versus nonmarital character of a pre-marital brokerage account that was pledged as collateral and used to obtain and repay a loan used for marital purposes.

## I.      The trial court erred by failing to make sufficient findings

Husband raises a number of arguments that the trial court erred by failing to make sufficient findings.  Wife raises similar arguments on cross-appeal.  We agree with most of these arguments.

---

[1] *See, e.g.*, *Elliott v. Elliott*, 648 So. 2d 135, 135 (Fla. 4th DCA 1994) ("Time and time again the appellate courts have endeavored to inform the bar about the importance of adhering to rule 9.330 expressing the hope that the bar will heed the Rule's command that the motion shall not reargue the merits of the court's order.") (quotations omitted); *Lawyers Title Ins. Corp. v. Reitzes*, 631 So. 2d 1100, 1101 (Fla. 4th DCA 1993) ("Certainly it is not the function of a petition for rehearing to furnish a medium through which counsel may advise the court that they disagree with its conclusion, to reargue matters already discussed in briefs and oral argument and necessarily considered by the court, or to request the court to change its mind as to a matter which has already received the careful attention of the judges, or to further delay the termination of litigation.") (citation and quotation omitted); *McDonnell v. Sanford Airport Auth.*, 200 So. 3d 83, 84–85 (Fla. 5th DCA 2015) (motions for rehearing are "not a vehicle through which an unhappy litigant or attorney may reargue the same points previously presented, or discuss the bottomless depth of the displeasure that one might feel toward this judicial body as a result of having unsuccessfully sought appellate relief") (cleaned up).

First, Husband argues that the trial court failed to equitably distribute certain liabilities. We agree that the trial court did not explicitly adopt and incorporate Wife's proposed equitable distribution schedule into the final order or otherwise identify and distribute marital liabilities that were presented at trial. On remand, the trial court should specifically identify and distribute all assets and liabilities, preferably in the order's text or in a distribution schedule plainly attached to the order.[2]

Second, both Husband and Wife argue that the trial court erred in valuing Husband's law practice, without findings or explanation, at $140,000. Wife's expert testified that the practice was valued at about $263,000. Husband argued that the practice should be valued at near zero. We need not decide who is right, but the trial court failed to explain how it arrived at the $140,000 figure or identify the substantial, competent evidence in the record supporting a $140,000 valuation. While we can appreciate the apparent Solomonic wisdom of the trial court, baby-splitting must still be supported by competent, substantial evidence. *See, e.g., Mullen v. Mullen*, 825 So. 2d 1078, 1079 (Fla. 4th DCA 2002) (holding that while "a trial court has broad discretion in valuing a retirement account, the trial court must arrive at an appropriate figure without merely resorting to an estimation.") (quotations and citation omitted); *Vanzant v. Vanzant*, 82 So. 3d 991, 992–93 (Fla. 1st DCA 2011) ("It appears that the trial court simply 'split the difference' between the values presented by the parties. This was error.") (footnote omitted); *Augoshe v. Lehman*, 962 So. 2d 398, 403 (Fla. 2d DCA 2007) ("The trial court's valuation must be based on competent evidence and cannot be determined by splitting the difference.") (cleaned up); *Blossman v. Blossman*, 92 So. 3d 878, 878 (Fla. 1st DCA 2012) ("[I]t appears as though the trial court split the difference between the two valuations. Florida law prohibits this type of valuation.").

---

[2] We note that some of the liabilities Husband on appeal seeks to distribute do not appear to be supported by competent, substantial evidence at trial. No testimony or other evidence whatsoever was presented as to these liabilities. The fact that Husband identified liabilities on his pre-trial proposed equitable distribution schedule was insufficient; absent agreement, the parties must actually present competent evidence at trial of any assets and liabilities they wish the court to distribute in order to trigger the court's obligation to distribute them. *See, e.g., Aguirre v. Aguirre*, 985 So. 2d 1203, 1207 (Fla. 4th DCA 2008) ("A trial judge has no duty under section 61.075 to make findings of value if the parties have not presented any evidence on that issue.") (citing *Simmons v. Simmons*, 979 So. 2d 1063, 1064 (Fla. 1st DCA 2008)). On remand, we leave to the trial court's discretion whether it wishes to hear additional evidence concerning the liabilities that were not supported by evidence at trial, or whether it simply wishes to identify and distribute the liabilities that were supported at trial.

On remand, the trial court may in its discretion take new evidence, and should enter specific findings, valuing the law practice in a manner supported by competent, substantial evidence, and with a clear valuation date.

Third, both Husband and Wife argue that the trial court erred in modifying, without sufficient findings, the parties' agreed order on temporary support, which remained in place for years prior to trial. We agree. While the court has broad discretion to modify temporary support orders, modification must be supported by findings of need and ability to pay. *See Bengisu v. Bengisu*, 12 So. 3d 283, 286 (Fla. 4th DCA 2009) ("In determining whether and to what extent temporary alimony is required, the trial court must consider the needs of the spouse requesting the alimony and the ability of the other spouse to pay alimony.") (citation omitted); *Driscoll v. Driscoll*, 915 So. 2d 771, 773 (Fla. 2d DCA 2005) ("[T]emporary alimony awards must be supported by competent, substantial evidence that demonstrates the need for support and the paying spouse's ability to pay.") (citation omitted); § 61.14(11)(a), Fla. Stat. (2024) ("A court may, upon good cause shown, and without a showing of a substantial change of circumstances, modify, vacate, or set aside a temporary support order before or upon entering a final order in a proceeding.").

The trial court failed to explain how it calculated the award of temporary alimony arrearages, where the agreed order was for undifferentiated support with no way to identify which share of the award was for child support and which was alimony. Any order modifying temporary support should follow best practice and differentiate between child support and alimony, making the appropriate findings for each. *See Van Maerssen v. Gerdts*, 213 So. 3d 952, 953–54 (Fla. 4th DCA 2017) (holding "the trial court abused its discretion in awarding the wife undifferentiated spousal and child support instead of calculating them separately" and "[t]he trial court's failure to specify which share of the award was for spousal support and which share was for child support has compounded our difficulty in evaluating whether the award is supported by the evidence") (quotation omitted) (citing *Greenhouse v. Greenhouse*, 913 So. 2d 1201, 1201 (Fla. 4th DCA 2005), and *Blum v. Blum*, 769 So. 2d 1142, 1143 (Fla. 4th DCA 2000)); *Allison v. Allison*, 605 So. 2d 130, 131 (Fla. 4th DCA 1992) (remanding for clarification where it was unclear how the trial court calculated deduction in temporary alimony arrearage). On remand, the trial court should recalculate the awards for temporary alimony arrearages, making the necessary findings based on competent, substantial evidence of need and ability to pay. Whether additional testimony and evidence is required or whether the current record contains

sufficient evidence, we leave for the trial court to determine.

Fourth, Husband argues that the trial court erred in calculating prejudgment interest. Wife concedes error. On remand, the trial court should correct the error.[3]

Fifth, Husband argues that the trial court did not make sufficient written factual findings to support its award of attorney's fees to Wife. Wife concedes error, in part, agreeing that the trial court should be directed to make specific written findings as to the lodestar amount of such fees on remand. On remand, the trial court should make sufficient written findings to calculate the reasonable attorney's fees in accordance with our precedent, including *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985) and *Rosen v. Rosen*, 696 So. 2d 697, 699 (Fla. 1997). *See also Faircloth v. Bliss*, 917 So. 2d 1005, 1006 (Fla. 4th DCA 2006) ("Generally, a fee award must be supported by competent evidence which must include evidence detailing the services performed and the reasonableness of the fee.") (citation omitted); *Norman v. Norman*, 939 So. 2d 240, 242 (Fla. 1st DCA 2006) ("A dissolution order directing a party to pay the other party's fees and costs, which recites simply that the total amounts are reasonable time spent and hourly rates, is insufficient under *Rowe*.") (quotations and citation omitted).[4]

## II. The court erred by characterizing Husband's brokerage account as marital property

Husband opened a Wells Fargo brokerage account prior to marriage.

---

[3] We are aware that the trial court, with the parties' agreement, issued an amended judgment modifying the prejudgment interest calculation while this appeal was pending. That amended judgment is a nullity. *See Jallali v. Knightsbridge Vill. Homeowners' Ass'n, Inc.*, 152 So. 3d 808, 809 (Fla. 4th DCA 2014) ("When an appeal is taken, the lower court is divested of jurisdiction to proceed with matters related to the final judgment.") (citation omitted); *Fonseca v. Taverna Imports, Inc.*, 193 So. 3d 92, 94 (Fla. 3d DCA 2016) ("[A] trial court is without jurisdiction to modify a judgment, while that judgment is pending on appeal, in the absence of the appellate court relinquishing jurisdiction to the trial court for that purpose.") (citation omitted). Instead, the parties could have asked us to relinquish jurisdiction for the limited purpose of modifying the judgment by agreement, or they could have asked the trial court to stay that portion of the order while the appeal was pending.

[4] We reject as without merit Husband's argument that the trial court erred in failing to make factual findings on the parties' net incomes with respect to child support calculations. We summarily affirm.

During the marriage, Husband used his Wells Fargo brokerage account as collateral to obtain a margin loan. The loan proceeds were used to pay marital expenses. Husband then paid off the margin loan using funds from the parties' marital Bank of America checking account, by depositing those funds into his Wells Fargo brokerage account. Wife argued that "commingling" made the Wells Fargo brokerage account a marital asset.

The trial court held that, while Husband's Wells Fargo brokerage account started as a nonmarital asset, it became a marital asset when marital monies, used to pay back the loan, were deposited into the Wells Fargo brokerage account. As we explain, that was error, and the Wells Fargo brokerage account (absent perhaps about $94, which may have been commingled) remained nonmarital property not subject to distribution.

"An asset acquired prior to the marriage is, by definition, nonmarital." *Robinson v. Robinson*, 10 So. 3d 196, 197 (Fla. 1st DCA 2009); *see also* § 61.075(6)(b)1., Fla. Stat. (2024). But "nonmarital assets may lose their nonmarital character and become marital assets where . . . they have been commingled with marital assets. This is especially true with respect to money because money is fungible, and once commingled it loses its separate character." *Dravis v. Dravis*, 170 So. 3d 849, 852 (Fla. 2d DCA 2015) (cleaned up).

But merely pledging the account as collateral does not convert the account to marital property. *See Higgins v. Higgins*, 226 So. 3d 901, 907 (Fla. 4th DCA 2017) ("[T]he use of marital funds to satisfy a marital debt secured by the nonmarital property did not transform the entire value of the [premarital] property into a marital asset.") (footnote omitted); *Escalona Socarras v. Bazan Vassallo*, 273 So. 3d 131, 132 (Fla. 3d DCA 2019) (holding that "Former Wife failed to establish that the Former Husband's Miami Property had been 'transformed' to a marital asset" where "the Former Husband obtained an equity line of credit in the amount of $89,000 for an investment in Peru, using the Miami Property as collateral") (collecting authority); *Farrior v. Farrior*, 736 So. 2d 1177, 1180 (Fla. 1999) ("There is no principle of statutory law, case law, or equity that would transform a clearly identifiable nonmarital asset into a marital asset merely because the stock was pledged as a collateral for marital debts.") (Pariente, J., concurring).

Here, the record reflects a Wells Fargo account statement showing the margin loan balance to be $39,480.24 on November 30, 2019, and $0 by December 31, 2019. The Wells Fargo account statement also details an electronic funds transfer, reflecting that on December 16, 2019, a direct

transfer of $39,574.06 was made from the parties' joint Bank of America checking account. The record also includes a Bank of America statement confirming an electronic transfer of $39,574.06 was made from the parties' joint Bank of America checking account in December 2019. This was supported by testimony from Wife's expert.

This reflects that no commingling occurred, because the monies paid into the Wells Fargo account matched the marital debt owed, nearly down to the dollar, and remained traceable to payment of that debt. *See, e.g., Belmont v. Belmont*, 761 So. 2d 406, 408 (Fla. 2d DCA 2000) ("Money loses its nonmarital character when it is commingled with marital money and becomes untraceable.") (citation omitted); *Grieco v. Grieco*, 917 So. 2d 1052, 1055 (Fla. 2d DCA 2006) ("Consolidated bank statements reflecting a total account balance for the Husband and Wife do not change the character of the Husband's inherited funds where those funds remain separate and identifiable.").

Perhaps commingling occurred to the extent that the amounts do not match perfectly, about $94, but that would only convert that commingled portion into a marital character, as the remaining bulk of funds remained traceable.[5] *Cf. Yon v. Yon*, 286 So. 3d 322, 328 (Fla. 1st DCA 2019) ("Deposit of the funds does not necessarily make the entire account marital. The former husband may be able to meet his burden of proof to establish what portion of the account remains nonmarital."). The trial court and parties can decide whether to litigate that *de minimis* sum on remand.

### III. Conclusion

Accordingly, we remand this case to the trial court to conduct any further proceedings that are not inconsistent with this opinion and to issue a new final judgment of dissolution of marriage.

*Affirmed in part, reversed in part, and remanded for further proceedings.*

KLINGENSMITH and SHAW, JJ., concur.

\* \* \*

---

[5] We recognize an alternative plausible explanation may be that the $94 was interest which became due and owing between the November 30, 2019 statement and the December 16, 2019 funds transfer. But the record does not support this explanation.

7

*Not final until disposition of timely-filed motion for rehearing.*